ZBS Law, LLP
Nichole L. Glowin, Esq. SBN 262932
30 Corporate Park, Suite 450
Irvine, CA 92606
Phone: (714) 848-7920
Facsimile: (714) 908-2615
Email: bankruptcy@zbslaw.com

Attorneys for Secured Creditor, Lakeview Loan Servicing, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA- RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>Maximo Arturo Arriola,<br><br>　　　　Debtor. | Case No.:  6:23-bk-14028-SY<br><br>Chapter 13<br><br>**OBJECTION TO CONFIRMATION OF DEBTOR'S AMENDED CHAPTER 13 PLAN**<br><br>**341(a) Creditor's Meeting:**<br>Date:　　　October 25, 2023<br>Time:　　　8:00 a.m.<br>Location:  Video Conference<br><br>**Confirmation Hearing:**<br>Date:　　　May 7, 2024<br>Time:　　　1:30 p.m.<br>Location:  United States Bankruptcy Court<br>　　　　　　3420 Twelfth Street, Floor 3<br>　　　　　　Riverside, CA<br>　　　　　　**Courtroom 302** |

　　　**TO THE HONORABLE SCOTT H. YUN, THE DEBTOR, THE CHAPTER 13 TRUSTEE, THEIR COUNSEL OF RECORD, IF ANY, AND ALL OTHER INTERESTED PARTIES:**

　　　Lakeview Loan Servicing, LLC ("Secured Creditor") hereby submits the following Objection to Confirmation of Debtor's Amended Chapter 13 Plan filed by Maximo Arturo Arriola ("Debtor"). The objection is based on the authorities cited herein, any exhibits appended

hereto, and on such additional submissions as may be presented at or before the confirmation hearing.

## I. REQUEST FOR JUDICIAL NOTICE

Secured Creditor, requests that in connection with the Objection to Confirmation of Debtor's Amended Chapter 13 Plan, this Court take judicial notice, pursuant to Rule 201 and 902(4) of the Federal Rules of Evidence, which is applicable to bankruptcy proceedings pursuant to Federal Rule Bankruptcy Procedure 9017, of the following documents:

1.    Filed Proof of Claim, **Exhibit "1"**;
2.    Entered APO Order, **Exhibit "2".**

## II. STATEMENT OF FACTS

Secured Creditor is the holder of the first position Note and Deed of Trust secured by Debtor's primary residence located at 4199 9th Street, Riverside, CA 92501 which are included in the filed proof of claim and is attached hereto as **Exhibit 1**, respectively.

On or about September 5, 2023, Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code as Case No. 6:23-bk-14028-SY ("Bankruptcy Action")

Secured Creditor filed its proof of claim in the Bankruptcy Action concerning the Note, Deed of Trust and Property. Secured Creditor's proof of claim loan records reflects estimated pre-petition arrearages due and owing in the amount of $104,518.64.

## III. ARGUMENT

The provisions of 11 United States Code ("U.S.C.") Section 1325 set forth requirements for the Court to confirm a Chapter 13 Plan. The burden is on the debtor to demonstrate that the plan meets the conditions essential for confirmation. *Warren v. Fidelity & Causalty Co. of NY (In re Warren)*, 89 B.R. 87, 93 (9th Cir. BAP 1988). For the reasons detailed herein, the Debtor fails to meet this burden.

## 1. DEBTOR'S AMENDED PLAN CANNOT BE CONFIRMED AS IT IS VAGUE, AMBIGUOUS AND DUPLICATIVELY CLASSIFIES SECURED CREDITOR'S CLAIM

Secured Creditor objects to the Amended Plan as it is vague, ambiguous and fails to provide adequate information for confirmation. The proposed Amended Plan lists Secured

Creditor's Claim under Class 2 for Claims Secured Solely by Property That is Debtor's Principal Residence stating the arrearage amount as $104,519.00 with no estimated monthly payment on arrearage stated with post-petition payments to be paid directly by the Debtor. Furthermore, the proposed Plan calls for monthly plan payments in the amount of $1,000.00 for months 1 through 9 and a payment of $113,279.00 for month 10. However, it is not specified where the $113,279.00 will come from. On or about April 4, 2024, Secured Creditor and Debtor entered into a Stipulation for Adequate Protection Order Re: Motion for Relief from the Automatic Stay which provides for a cure of the post-petition arrears of $12,733.80 together with any pre-petition amounts due and owing, by completing a refinance transaction to payoff Secured Creditor in full on or before June 30, 2024, a copy of the order is attached hereto as **Exhibit 2**, respectively. Secured Creditor is not opposed to confirmation of the Amended Plan as long as it includes the Entered APO Order and provides for relief from stay as of June 30, 2024, if the property is not sold or refinanced at that time.

## IV. CONCLUSION

The Amended Chapter 13 Plan proposed by Debtor must provide for Secured Creditor's claim and eliminate the objections specified above to comply with applicable provisions of the Bankruptcy Code. It is respectfully requested that Confirmation of the Amended Chapter 13 Plan proposed by Debtor be denied.

**WHEREFORE**, Secured Creditor prays as follows:

1.      That confirmation of Amended Debtor's Chapter 13 Plan be denied.

2.      In the event the court is otherwise inclined to confirm the Plan in this case, that confirmation be conditioned upon the Amended Plan providing for the terms of the Entered APO Order.

3.      For such further relief as the Court deems appropriate.

Respectfully Submitted,

Dated: April 22, 2024            **ZBS Law, LLP**

By: /s/ Nichole L. Glowin
    Nichole L. Glowin, SBN 262932
    Attorneys for Secured Creditor.

3

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Maximo Arturo Arriola |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 6:23-bk-14028-SY |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Lakeview Loan Servicing, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| LoanCare, LLC<br>Name | LoanCare, LLC<br>Name |
| 3637 Sentara Way<br>Number       Street | P.O. Box 8068<br>Number       Street |
| Virginia Beach       VA       23452<br>City       State       ZIP Code | Virginia Beach       VA       23450<br>City       State       ZIP Code |
| Contact phone (800) 909-9525 | Contact phone (800) 909-9525 |
| Contact email _____ | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

EXHIBIT 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  5  0  5  5

**7. How much is the claim?**  $ _____ 379,419.45 .  **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money loaned

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe:   Recorded Deed

**Basis for perfection:**   4199 9TH STREET, RIVERSIDE, California  92501

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**  $ _____

**Amount of the claim that is secured:**  $ _____ 379,419.45

**Amount of the claim that is unsecured:**  $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $ _____ 104,518.64

**Annual Interest Rate** (when case was filed) 4.500 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**  $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

# EXHIBIT 1

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   11/14/2023
                   MM / DD / YYYY

/s/ Nichole L. Glowin
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Nichole L. Glowin, Esq. | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney for Creditor | | |
| Company | ZBS LAW, LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 30 Corporate Park, Suite 450 | | |
| | Number          Street | | |
| | Irvine | CA | 92604 |
| | City | State | ZIP Code |
| Contact phone | 714-848-7920 | Email | bankruptcy@zbslaw.com |

EXHIBIT 1

Mortgage Proof of Claim Attachment 12/15

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.**

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case number: | 6:23-bk-14028-SY | Principal balance: | $297,355.96 | Principal & interest due: | $65,069.05 | Principal & interest: | $1,587.05 |
| Debtor 1: | Maximo Arturo Arriola | Deferred balance: | $0.00 | Prepetition fees due: | $12,646.20 | Monthly escrow: | $410.96 |
| Debtor 2: | | Interest due: | $45,901.58 | Escrow deficiency for funds advanced: | $23,515.71 | Private mortgage insurance: | $192.27 |
| Last 4 digits to identify: | 5055 | Fees, costs due: | $12,646.20 | Projected escrow shortage: | $3,287.68 | Total monthly payment: | $2,190.28 |
| Creditor: | Lakeview Loan Servicing, LLC | Escrow deficiency for funds: | $23,515.71 | Less total funds on hand: | -$0.00 | | |
| Servicer: | LoanCare, LLC | Less total funds on hand: | -$0.00 | Total prepetition arrearage: | $104,518.64 | | |
| Fixed accrual/daily: | Fixed Accrual | Total debt: | $379,419.45 | | | | |
| Simple interest/other: | Fixed Accrual | | | | | | |

**Part 5 : Loan Payment History from First Date of Default**

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| | | | | Beginning Balance | | $0.00 | | | | | | $312,809.53 | | $847.02 | $0.00 | $0.00 |
| 06/01/2017 | $2,158.05 | | | Contractual Payment Due | 06/01/2017 | $2,158.05 | | | | | | $312,809.53 | | $847.02 | $0.00 | $0.00 |
| 07/01/2017 | $2,158.05 | | | Contractual Payment Due | 06/01/2017 | $4,316.10 | | | | | | $312,809.53 | | $847.02 | $0.00 | $0.00 |
| 07/05/2017 | | | $216.45 | Escrow Disbursement | 06/01/2017 | $4,316.10 | | | ($216.45) | | | $312,809.53 | | $630.57 | $0.00 | $0.00 |
| 07/05/2017 | | $2,158.05 | | Funds Received | 07/01/2017 | $2,158.05 | $414.01 | $1,173.04 | $571.00 | | | $312,395.52 | | $1,201.57 | $0.00 | $0.00 |
| 07/05/2017 | | $1.95 | | Funds Received | 07/01/2017 | $2,158.05 | | | | | $1.95 | $312,395.52 | | $1,201.57 | $0.00 | $1.95 |
| 07/13/2017 | | | | Escrow Paid from Suspense | 07/01/2017 | $2,158.05 | | | $1.95 | | ($1.95) | $312,395.52 | | $1,203.52 | $0.00 | $0.00 |
| 07/13/2017 | | $2.65 | | Escrow Only Payment | 07/01/2017 | $2,158.05 | | | $2.65 | | | $312,395.52 | | $1,206.17 | $0.00 | $0.00 |
| 07/17/2017 | $2,158.05 | | | Funds Received | 08/01/2017 | $0.00 | $415.57 | $1,171.48 | $571.00 | | | $311,979.95 | | $1,777.17 | $0.00 | $0.00 |
| 07/17/2017 | | $1.95 | | Principal Curtailment | 08/01/2017 | $0.00 | $1.95 | | | | | $311,978.00 | | $1,777.17 | $0.00 | $0.00 |
| 07/27/2017 | | | $63.48 | Late Charges | 08/01/2017 | $0.00 | | | | $63.48 | | $311,978.00 | | $1,777.17 | $63.48 | $0.00 |
| 07/27/2017 | | ($1.95) | | Principal Curtailment Reversal | 08/01/2017 | $0.00 | ($1.95) | | | | | $311,979.95 | | $1,777.17 | $63.48 | $0.00 |
| 07/27/2017 | | ($2,158.05) | | Funds Returned NSF | 07/01/2017 | $2,158.05 | ($415.57) | ($1,171.48) | ($571.00) | | | $312,395.52 | | $1,206.17 | $63.48 | $0.00 |
| 08/01/2017 | $2,158.05 | | | Contractual Payment Due | 07/01/2017 | $4,316.10 | | | | | | $312,395.52 | | $1,206.17 | $63.48 | $0.00 |
| 08/04/2017 | | | $216.45 | Escrow Disbursement | 07/01/2017 | $4,316.10 | | | ($216.45) | | | $312,395.52 | | $989.72 | $63.48 | $0.00 |
| 08/16/2017 | | | $63.48 | Late Charges | 07/01/2017 | $4,316.10 | | | | $63.48 | | $312,395.52 | | $989.72 | $126.96 | $0.00 |
| 08/23/2017 | | $2,285.01 | | Funds Received | 08/01/2017 | $2,158.05 | $415.57 | $1,171.48 | $571.00 | | $126.96 | $311,979.95 | | $1,560.72 | $126.96 | $126.96 |
| 08/23/2017 | | ($126.96) | | Late Charges Paid | 08/01/2017 | $2,158.05 | | | | ($126.96) | ($126.96) | $311,979.95 | | $1,560.72 | $0.00 | $0.00 |
| 08/29/2017 | | | $20.00 | Property Inspection Fee | 08/01/2017 | $2,158.05 | | | | $20.00 | | $311,979.95 | | $1,560.72 | $20.00 | $0.00 |
| 09/01/2017 | $2,158.05 | | | Contractual Payment Due | 08/01/2017 | $4,316.10 | | | | | | $311,979.95 | | $1,560.72 | $20.00 | $0.00 |
| 09/05/2017 | | | $216.45 | Escrow Disbursement | 08/01/2017 | $4,316.10 | | | ($216.45) | | | $311,979.95 | | $1,344.27 | $20.00 | $0.00 |
| 09/18/2017 | | | $63.48 | Late Charges | 08/01/2017 | $4,316.10 | | | | $63.48 | | $311,979.95 | | $1,344.27 | $83.48 | $0.00 |
| 09/26/2017 | | | $20.00 | Property Inspection Fee | 08/01/2017 | $4,316.10 | | | | $20.00 | | $311,979.95 | | $1,344.27 | $103.48 | $0.00 |
| 10/01/2017 | $2,158.05 | | | Contractual Payment Due | 08/01/2017 | $6,474.15 | | | | | | $311,979.95 | | $1,344.27 | $103.48 | $0.00 |
| 10/05/2017 | | | $216.45 | Escrow Disbursement | 08/01/2017 | $6,474.15 | | | ($216.45) | | | $311,979.95 | | $1,127.82 | $103.48 | $0.00 |
| 10/16/2017 | | | $63.48 | Late Charges | 08/01/2017 | $6,474.15 | | | | $63.48 | | $311,979.95 | | $1,127.82 | $166.96 | $0.00 |
| 10/24/2017 | | | $20.00 | Property Inspection Fee | 08/01/2017 | $6,474.15 | | | | $20.00 | | $311,979.95 | | $1,127.82 | $186.96 | $0.00 |
| 11/01/2017 | $2,158.05 | | | Contractual Payment Due | 08/01/2017 | $8,632.20 | | | | | | $311,979.95 | | $1,127.82 | $186.96 | $0.00 |
| 11/03/2017 | | | $216.45 | Escrow Disbursement | 08/01/2017 | $8,632.20 | | | ($216.45) | | | $311,979.95 | | $911.37 | $186.96 | $0.00 |
| 11/07/2017 | | | $1,384.00 | Escrow Disbursement | 08/01/2017 | $8,632.20 | | | ($1,384.00) | | | $311,979.95 | | ($472.63) | $186.96 | $0.00 |
| 11/21/2017 | | | $20.00 | Property Inspection Fee | 08/01/2017 | $8,632.20 | | | | $20.00 | | $311,979.95 | | ($472.63) | $206.96 | $0.00 |
| 12/01/2017 | $2,158.05 | | | Contractual Payment Due | 08/01/2017 | $10,790.25 | | | | | | $311,979.95 | | ($472.63) | $206.96 | $0.00 |
| 12/05/2017 | | | $216.45 | Escrow Disbursement | 08/01/2017 | $10,790.25 | | | ($216.45) | | | $311,979.95 | | ($689.08) | $206.96 | $0.00 |
| 12/29/2017 | | | | Interest on Escrow | 08/01/2017 | $10,790.25 | | | $12.04 | | | $311,979.95 | | ($677.04) | $206.96 | $0.00 |
| 01/01/2018 | $2,158.05 | | | Contractual Payment Due | 08/01/2017 | $12,948.30 | | | | | | $311,979.95 | | ($677.04) | $206.96 | $0.00 |
| 01/05/2018 | | | $216.45 | Escrow Disbursement | 08/01/2017 | $12,948.30 | | | ($216.45) | | | $311,979.95 | | ($893.49) | $206.96 | $0.00 |
| 01/16/2018 | | | $63.48 | Late Charges | 08/01/2017 | $12,948.30 | | | | $63.48 | | $311,979.95 | | ($893.49) | $270.44 | $0.00 |
| 02/01/2018 | $2,158.05 | | | Contractual Payment Due | 08/01/2017 | $15,106.35 | | | | | | $311,979.95 | | ($893.49) | $270.44 | $0.00 |
| 02/05/2018 | | | $216.45 | Escrow Disbursement | 08/01/2017 | $15,106.35 | | | ($216.45) | | | $311,979.95 | | ($1,109.94) | $270.44 | $0.00 |

EXHIBIT 1

Case 6:23-bk-14028-SY Claim 1-1 Filed 04/22/24 Desc Main Document Page 5 of
Case 6:23-bk-14028-SY Doc 91 Filed 04/22/24 Entered 04/22/24 16:19:29 Page 8 of
Main Document Page 8 of 73

**Part 5 : Loan Payment History from First Date of Default**

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | Balance After Amount Received or Incurred | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued Interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 02/16/2018 | | | $63.48 | Late Charges | 08/01/2017 | $15,106.35 | | | | $63.48 | | $311,979.95 | | ($1,109.94) | $333.92 | $0.00 |
| 02/27/2018 | | | $20.00 | Property Inspection Fee | 08/01/2017 | $15,106.35 | | | | $20.00 | | $311,979.95 | | ($1,109.94) | $353.92 | $0.00 |
| 03/01/2018 | $2,158.05 | | | Contractual Payment Due | 08/01/2017 | $17,264.40 | | | | | | $311,979.95 | | ($1,109.94) | $353.92 | $0.00 |
| 03/05/2018 | | | $216.45 | Escrow Disbursement | 08/01/2017 | $17,264.40 | | | ($216.45) | | | $311,979.95 | | ($1,326.39) | $353.92 | $0.00 |
| 03/07/2018 | | | $1,384.00 | Escrow Disbursement | 08/01/2017 | $17,264.40 | | | ($1,384.00) | | | $311,979.95 | | ($2,710.39) | $353.92 | $0.00 |
| 03/12/2018 | | | $824.00 | Property Inspection Fee | 08/01/2017 | $17,264.40 | | | ($824.00) | | | $311,979.95 | | ($3,534.39) | $353.92 | $0.00 |
| 03/27/2018 | | | $20.00 | Property Inspection Fee | 08/01/2017 | $17,264.40 | | | | $20.00 | | $311,979.95 | | ($3,534.39) | $373.92 | $0.00 |
| 04/01/2018 | $2,158.05 | | | Contractual Payment Due | 08/01/2017 | $19,422.45 | | | | | | $311,979.95 | | ($3,534.39) | $373.92 | $0.00 |
| 04/05/2018 | | | $216.45 | Escrow Disbursement | 08/01/2017 | $19,422.45 | | | ($216.45) | | | $311,979.95 | | ($3,750.84) | $373.92 | $0.00 |
| 04/16/2018 | | | $63.48 | Late Charges | 08/01/2017 | $19,422.45 | | | | $63.48 | | $311,979.95 | | ($3,750.84) | $437.40 | $0.00 |
| 05/01/2018 | $2,162.97 | | | Contractual Payment Due | 08/01/2017 | $21,585.42 | | | | | | $311,979.95 | | ($3,750.84) | $437.40 | $0.00 |
| 05/01/2018 | | | $20.00 | Property Inspection Fee | 08/01/2017 | $21,585.42 | | | | $20.00 | | $311,979.95 | | ($3,750.84) | $457.40 | $0.00 |
| 05/04/2018 | | | $212.86 | Escrow Disbursement | 08/01/2017 | $21,585.42 | | | ($212.86) | | | $311,979.95 | | ($3,963.70) | $457.40 | $0.00 |
| 06/01/2018 | $2,162.97 | | | Contractual Payment Due | 08/01/2017 | $23,748.39 | | | | | | $311,979.95 | | ($3,963.70) | $457.40 | $0.00 |
| 06/05/2018 | | | $212.86 | Escrow Disbursement | 08/01/2017 | $23,748.39 | | | ($212.86) | | | $311,979.95 | | ($4,176.56) | $457.40 | $0.00 |
| 07/01/2018 | $2,162.97 | | | Contractual Payment Due | 08/01/2017 | $25,911.36 | | | | | | $311,979.95 | | ($4,176.56) | $457.40 | $0.00 |
| 07/05/2018 | | | $212.86 | Escrow Disbursement | 08/01/2017 | $25,911.36 | | | ($212.86) | | | $311,979.95 | | ($4,389.42) | $457.40 | $0.00 |
| 08/01/2018 | $2,162.97 | | | Contractual Payment Due | 08/01/2017 | $28,074.33 | | | | | | $311,979.95 | | ($4,389.42) | $457.40 | $0.00 |
| 08/03/2018 | | | $212.86 | Escrow Disbursement | 08/01/2017 | $28,074.33 | | | ($212.86) | | | $311,979.95 | | ($4,602.28) | $457.40 | $0.00 |
| 09/01/2018 | $2,162.97 | | | Contractual Payment Due | 08/01/2017 | $30,237.30 | | | | | | $311,979.95 | | ($4,602.28) | $457.40 | $0.00 |
| 09/05/2018 | | | $212.86 | Escrow Disbursement | 08/01/2017 | $30,237.30 | | | ($212.86) | | | $311,979.95 | | ($4,815.14) | $457.40 | $0.00 |
| 10/01/2018 | $2,162.97 | | | Contractual Payment Due | 08/01/2017 | $32,400.27 | | | | | | $311,979.95 | | ($4,815.14) | $457.40 | $0.00 |
| 10/05/2018 | | | $212.86 | Escrow Disbursement | 08/01/2017 | $32,400.27 | | | ($212.86) | | | $311,979.95 | | ($5,028.00) | $457.40 | $0.00 |
| 10/09/2018 | | | $20.00 | Property Inspection Fee | 08/01/2017 | $32,400.27 | | | | $20.00 | | $311,979.95 | | ($5,028.00) | $477.40 | $0.00 |
| 11/01/2018 | $2,162.97 | | | Contractual Payment Due | 08/01/2017 | $34,563.24 | | | | | | $311,979.95 | | ($5,028.00) | $477.40 | $0.00 |
| 11/05/2018 | | | $212.86 | Escrow Disbursement | 08/01/2017 | $34,563.24 | | | ($212.86) | | | $311,979.95 | | ($5,240.86) | $477.40 | $0.00 |
| 11/06/2018 | | | $20.00 | Property Inspection Fee | 08/01/2017 | $34,563.24 | | | | $20.00 | | $311,979.95 | | ($5,240.86) | $497.40 | $0.00 |
| 11/06/2018 | | | $75.00 | Attorney Costs | 08/01/2017 | $34,563.24 | | | | $75.00 | | $311,979.95 | | ($5,240.86) | $572.40 | $0.00 |
| 11/06/2018 | | | $75.00 | Attorney Costs | 08/01/2017 | $34,563.24 | | | | $75.00 | | $311,979.95 | | ($5,240.86) | $647.40 | $0.00 |
| 11/06/2018 | | | $75.00 | Attorney Costs | 08/01/2017 | $34,563.24 | | | | $75.00 | | $311,979.95 | | ($5,240.86) | $722.40 | $0.00 |
| 11/06/2018 | | | $7.85 | Attorney Costs | 08/01/2017 | $34,563.24 | | | | $7.85 | | $311,979.95 | | ($5,240.86) | $730.25 | $0.00 |
| 11/06/2018 | | | $24.00 | Attorney Costs | 08/01/2017 | $34,563.24 | | | | $24.00 | | $311,979.95 | | ($5,240.86) | $754.25 | $0.00 |
| 11/07/2018 | | | $498.75 | Attorney Fees | 08/01/2017 | $34,563.24 | | | | $498.75 | | $311,979.95 | | ($5,240.86) | $1,253.00 | $0.00 |
| 11/09/2018 | | | $1,861.20 | Escrow Disbursement | 08/01/2017 | $34,563.24 | | | ($1,861.20) | | | $311,979.95 | | ($7,102.06) | $1,253.00 | $0.00 |
| 11/13/2018 | | | $78.92 | Escrow Disbursement | 08/01/2017 | $34,563.24 | | | | $78.92 | | $311,979.95 | | ($7,102.06) | $1,331.92 | $0.00 |
| 12/01/2018 | $2,162.97 | | | Contractual Payment Due | 08/01/2017 | $36,726.21 | | | | | | $311,979.95 | | ($7,102.06) | $1,331.92 | $0.00 |
| 12/04/2018 | | | $20.00 | Property Inspection Fee | 08/01/2017 | $36,726.21 | | | | $20.00 | | $311,979.95 | | ($7,102.06) | $1,351.92 | $0.00 |
| 12/05/2018 | | | $212.86 | Escrow Disbursement | 08/01/2017 | $36,726.21 | | | ($212.86) | | | $311,979.95 | | ($7,314.92) | $1,351.92 | $0.00 |
| 01/01/2019 | $2,162.97 | | | Contractual Payment Due | 08/01/2017 | $38,889.18 | | | | | | $311,979.95 | | ($7,314.92) | $1,351.92 | $0.00 |
| 01/04/2019 | | | $212.86 | Escrow Disbursement | 08/01/2017 | $38,889.18 | | | ($212.86) | | | $311,979.95 | | ($7,527.78) | $1,351.92 | $0.00 |
| 01/08/2019 | | | $20.00 | Property Inspection Fee | 08/01/2017 | $38,889.18 | | | | $20.00 | | $311,979.95 | | ($7,527.78) | $1,371.92 | $0.00 |
| 02/01/2019 | $2,162.97 | | | Contractual Payment Due | 08/01/2017 | $41,052.15 | | | | | | $311,979.95 | | ($7,527.78) | $1,371.92 | $0.00 |
| 02/05/2019 | | | $212.86 | Escrow Disbursement | 08/01/2017 | $41,052.15 | | | ($212.86) | | | $311,979.95 | | ($7,740.64) | $1,371.92 | $0.00 |
| 02/06/2019 | | | $285.00 | Attorney Fees | 08/01/2017 | $41,052.15 | | | | $285.00 | | $311,979.95 | | ($7,740.64) | $1,656.92 | $0.00 |
| 02/06/2019 | | | $125.00 | Attorney Costs | 08/01/2017 | $41,052.15 | | | | $125.00 | | $311,979.95 | | ($7,740.64) | $1,781.92 | $0.00 |
| 02/06/2019 | | | $128.83 | Attorney Costs | 08/01/2017 | $41,052.15 | | | | $128.83 | | $311,979.95 | | ($7,740.64) | $1,910.75 | $0.00 |
| 02/06/2019 | | | $365.00 | Publication Fee | 08/01/2017 | $41,052.15 | | | | $365.00 | | $311,979.95 | | ($7,740.64) | $2,275.75 | $0.00 |
| 02/08/2019 | | | $75.00 | Attorney Costs | 08/01/2017 | $41,052.15 | | | | $75.00 | | $311,979.95 | | ($7,740.64) | $2,350.75 | $0.00 |
| 02/08/2019 | | | $27.00 | Attorney Costs | 08/01/2017 | $41,052.15 | | | | $27.00 | | $311,979.95 | | ($7,740.64) | $2,377.75 | $0.00 |
| 03/01/2019 | $2,178.78 | | | Contractual Payment Due | 08/01/2017 | $43,230.93 | | | | | | $311,979.95 | | ($7,740.64) | $2,377.75 | $0.00 |
| 03/05/2019 | | | $212.86 | Escrow Disbursement | 08/01/2017 | $43,230.93 | | | ($212.86) | | | $311,979.95 | | ($7,953.50) | $2,377.75 | $0.00 |

EXHIBIT 1

**Part 5 : Loan Payment History from First Date of Default**

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 03/20/2019 | | | $150.00 | Attorney Fees | 08/01/2017 | $43,230.93 | | | | $150.00 | | $311,979.95 | | ($7,953.50) | $2,527.75 | $0.00 |
| 04/01/2019 | $2,178.78 | | | Contractual Payment Due | 08/01/2017 | $45,409.71 | | | | | | $311,979.95 | | ($7,953.50) | $2,527.75 | $0.00 |
| 04/01/2019 | | | $50.00 | Attorney Fees | 08/01/2017 | $45,409.71 | | | | $50.00 | | $311,979.95 | | ($7,953.50) | $2,577.75 | $0.00 |
| 04/01/2019 | | | $1,861.20 | Escrow Disbursement | 08/01/2017 | $45,409.71 | | | ($1,861.20) | | | $311,979.95 | | ($9,814.70) | $2,577.75 | $0.00 |
| 04/05/2019 | | | $212.86 | Escrow Disbursement | 08/01/2017 | $45,409.71 | | | ($212.86) | | | $311,979.95 | | ($10,027.56) | $2,577.75 | $0.00 |
| 04/17/2019 | | $2,158.00 | | Funds Received | 08/01/2017 | $45,409.71 | | | | | $2,158.00 | $311,979.95 | | ($10,027.56) | $2,577.75 | $2,158.00 |
| 05/01/2019 | $2,178.78 | | | Contractual Payment Due | 08/01/2017 | $47,588.49 | | | | | | $311,979.95 | | ($10,027.56) | $2,577.75 | $2,158.00 |
| 05/03/2019 | | | $209.10 | Escrow Disbursement | 08/01/2017 | $47,588.49 | | | ($209.10) | | | $311,979.95 | | ($10,236.66) | $2,577.75 | $2,158.00 |
| 05/07/2019 | | | $500.00 | Attorney Fees | 08/01/2017 | $47,588.49 | | | | $500.00 | | $311,979.95 | | ($10,236.66) | $3,077.75 | $2,158.00 |
| 05/13/2019 | | | $300.00 | Attorney Fees | 08/01/2017 | $47,588.49 | | | | $300.00 | | $311,979.95 | | ($10,236.66) | $3,377.75 | $2,158.00 |
| 05/13/2019 | | | $250.00 | Attorney Fees | 08/01/2017 | $47,588.49 | | | | $250.00 | | $311,979.95 | | ($10,236.66) | $3,627.75 | $2,158.00 |
| 05/28/2019 | | $2,178.00 | | Funds Received | 08/01/2017 | $47,588.49 | | | | | $2,178.00 | $311,979.95 | | ($10,236.66) | $3,627.75 | $4,336.00 |
| 05/30/2019 | | | | Payment from Suspense | 09/01/2017 | $45,430.44 | $417.13 | $1,169.92 | $571.00 | | ($2,158.05) | $311,562.82 | | ($9,665.66) | $3,627.75 | $2,177.95 |
| 05/30/2019 | | | | Payment from Suspense | 10/01/2017 | $43,272.39 | $418.69 | $1,168.36 | $571.00 | | ($2,158.05) | $311,144.13 | | ($9,094.66) | $3,627.75 | $19.90 |
| 06/01/2019 | $2,178.78 | | | Contractual Payment Due | 10/01/2017 | $45,451.17 | | | | | | $311,144.13 | | ($9,094.66) | $3,627.75 | $19.90 |
| 06/05/2019 | | | $209.10 | Escrow Disbursement | 10/01/2017 | $45,451.17 | | | ($209.10) | | | $311,144.13 | | ($9,303.76) | $3,627.75 | $19.90 |
| 06/06/2019 | | | $811.00 | Escrow Disbursement | 10/01/2017 | $45,451.17 | | | ($811.00) | | | $311,144.13 | | ($10,114.76) | $3,627.75 | $19.90 |
| 06/11/2019 | | | $20.00 | Property Inspection Fee | 10/01/2017 | $45,451.17 | | | | $20.00 | | $311,144.13 | | ($10,114.76) | $3,647.75 | $19.90 |
| 07/01/2019 | $2,173.93 | | | Contractual Payment Due | 10/01/2017 | $47,625.10 | | | | | | $311,144.13 | | ($10,114.76) | $3,647.75 | $19.90 |
| 07/05/2019 | | | $209.10 | Escrow Disbursement | 10/01/2017 | $47,625.10 | | | ($209.10) | | | $311,144.13 | | ($10,323.86) | $3,647.75 | $19.90 |
| 08/01/2019 | $2,173.93 | | | Contractual Payment Due | 10/01/2017 | $49,799.03 | | | | | | $311,144.13 | | ($10,323.86) | $3,647.75 | $19.90 |
| 08/05/2019 | | | $209.10 | Escrow Disbursement | 10/01/2017 | $49,799.03 | | | ($209.10) | | | $311,144.13 | | ($10,532.96) | $3,647.75 | $19.90 |
| 08/06/2019 | | $2,178.00 | | Funds Received | 10/01/2017 | $49,799.03 | | | | | $2,178.00 | $311,144.13 | | ($10,532.96) | $3,647.75 | $2,197.90 |
| 08/08/2019 | | | | Payment from Suspense | 11/01/2017 | $47,640.98 | $420.26 | $1,166.79 | $571.00 | | ($2,158.05) | $310,723.87 | | ($9,961.96) | $3,647.75 | $39.85 |
| 08/16/2019 | | | $350.00 | Attorney Fees | 11/01/2017 | $47,640.98 | | | | $350.00 | | $310,723.87 | | ($9,961.96) | $3,997.75 | $39.85 |
| 08/22/2019 | | | $250.00 | Attorney Fees | 11/01/2017 | $47,640.98 | | | | $250.00 | | $310,723.87 | | ($9,961.96) | $4,247.75 | $39.85 |
| 08/22/2019 | | | $300.00 | Attorney Fees | 11/01/2017 | $47,640.98 | | | | $300.00 | | $310,723.87 | | ($9,961.96) | $4,547.75 | $39.85 |
| 08/27/2019 | | | $500.00 | Attorney Fees | 11/01/2017 | $47,640.98 | | | | $500.00 | | $310,723.87 | | ($9,961.96) | $5,047.75 | $39.85 |
| 09/01/2019 | $2,173.93 | | | Contractual Payment Due | 11/01/2017 | $49,814.91 | | | | | | $310,723.87 | | ($9,961.96) | $5,047.75 | $39.85 |
| 09/04/2019 | | $2,178.00 | | Funds Received | 11/01/2017 | $49,814.91 | | | | | $2,178.00 | $310,723.87 | | ($9,961.96) | $5,047.75 | $2,217.85 |
| 09/05/2019 | | | $209.10 | Escrow Disbursement | 11/01/2017 | $49,814.91 | | | ($209.10) | | | $310,723.87 | | ($10,171.06) | $5,047.75 | $2,217.85 |
| 09/06/2019 | | | | Payment from Suspense | 12/01/2017 | $47,656.86 | $421.84 | $1,165.21 | $571.00 | | ($2,158.05) | $310,302.03 | | ($9,600.06) | $5,047.75 | $59.80 |
| 10/01/2019 | $2,173.93 | | | Contractual Payment Due | 12/01/2017 | $49,830.79 | | | | | | $310,302.03 | | ($9,600.06) | $5,047.75 | $59.80 |
| 10/04/2019 | | | $209.10 | Escrow Disbursement | 12/01/2017 | $49,830.79 | | | ($209.10) | | | $310,302.03 | | ($9,809.16) | $5,047.75 | $59.80 |
| 10/08/2019 | | | $20.00 | Property Inspection Fee | 12/01/2017 | $49,830.79 | | | | $20.00 | | $310,302.03 | | ($9,809.16) | $5,067.75 | $59.80 |
| 10/23/2019 | | | $200.00 | Attorney Fees | 12/01/2017 | $49,830.79 | | | | $200.00 | | $310,302.03 | | ($9,809.16) | $5,267.75 | $59.80 |
| 10/28/2019 | | | $645.00 | Attorney Fees | 12/01/2017 | $49,830.79 | | | | $645.00 | | $310,302.03 | | ($9,809.16) | $5,912.75 | $59.80 |
| 11/01/2019 | $2,173.93 | | | Contractual Payment Due | 12/01/2017 | $52,004.72 | | | | | | $310,302.03 | | ($9,809.16) | $5,912.75 | $59.80 |
| 11/05/2019 | | | $209.10 | Escrow Disbursement | 12/01/2017 | $52,004.72 | | | ($209.10) | | | $310,302.03 | | ($10,018.26) | $5,912.75 | $59.80 |
| 11/14/2019 | | | $1,898.02 | Escrow Disbursement | 12/01/2017 | $52,004.72 | | | ($1,898.02) | | | $310,302.03 | | ($11,916.28) | $5,912.75 | $59.80 |
| 11/14/2019 | | $2,178.00 | | Funds Received | 12/01/2017 | $52,004.72 | | | | | $2,178.00 | $310,302.03 | | ($11,916.28) | $5,912.75 | $2,237.80 |
| 11/18/2019 | | | | Payment from Suspense | 01/01/2018 | $49,846.67 | $423.42 | $1,163.63 | $571.00 | | ($2,158.05) | $309,878.61 | | ($11,345.28) | $5,912.75 | $79.75 |
| 12/01/2019 | $2,173.93 | | | Contractual Payment Due | 01/01/2018 | $52,020.60 | | | | | | $309,878.61 | | ($11,345.28) | $5,912.75 | $79.75 |
| 12/05/2019 | | | $350.00 | Attorney Fees | 01/01/2018 | $52,020.60 | | | | $350.00 | | $309,878.61 | | ($11,345.28) | $6,262.75 | $79.75 |
| 12/05/2019 | | | $209.10 | Escrow Disbursement | 01/01/2018 | $52,020.60 | | | ($209.10) | | | $309,878.61 | | ($11,554.38) | $6,262.75 | $79.75 |
| 12/09/2019 | | | $550.00 | Attorney Fees | 01/01/2018 | $52,020.60 | | | | $550.00 | | $309,878.61 | | ($11,554.38) | $6,812.75 | $79.75 |
| 12/27/2019 | | $2,178.00 | | Funds Received | 02/01/2018 | $49,862.55 | $425.01 | $1,162.04 | $571.00 | | $19.95 | $309,453.60 | | ($10,983.38) | $6,812.75 | $99.70 |
| 01/01/2020 | $2,173.93 | | | Contractual Payment Due | 02/01/2018 | $52,036.48 | | | | | | $309,453.60 | | ($10,983.38) | $6,812.75 | $99.70 |
| 01/03/2020 | | | $209.10 | Escrow Disbursement | 02/01/2018 | $52,036.48 | | | ($209.10) | | | $309,453.60 | | ($11,192.48) | $6,812.75 | $99.70 |
| 01/09/2020 | | | $85.80 | Attorney Costs | 02/01/2018 | $52,036.48 | | | | $85.80 | | $309,453.60 | | ($11,192.48) | $6,898.55 | $99.70 |
| 01/10/2020 | | | $300.00 | Attorney Fees | 02/01/2018 | $52,036.48 | | | | $300.00 | | $309,453.60 | | ($11,192.48) | $7,198.55 | $99.70 |

EXHIBIT 1

**Part 5 : Loan Payment History from First Date of Default**

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 01/30/2020 | | $2,178.00 | | Funds Received | 02/01/2018 | $52,036.48 | | | | | $2,178.00 | $309,453.60 | | ($11,192.48) | $7,198.55 | $2,277.70 |
| 02/01/2020 | $2,173.93 | | | Contractual Payment Due | 02/01/2018 | $54,210.41 | | | | | | $309,453.60 | | ($11,192.48) | $7,198.55 | $2,277.70 |
| 02/03/2020 | | | | Payment from Suspense | 03/01/2018 | $52,052.36 | $426.60 | $1,160.45 | $571.00 | | ($2,158.05) | $309,027.00 | | ($10,621.48) | $7,198.55 | $119.65 |
| 02/05/2020 | | | $209.10 | Escrow Disbursement | 03/01/2018 | $52,052.36 | | | ($209.10) | | | $309,027.00 | | ($10,830.58) | $7,198.55 | $119.65 |
| 02/14/2020 | | $576.36 | | Funds Received | 03/01/2018 | $52,052.36 | | | | | $576.36 | $309,027.00 | | ($10,830.58) | $7,198.55 | $696.01 |
| 03/01/2020 | $2,173.93 | | | Contractual Payment Due | 03/01/2018 | $54,226.29 | | | | | | $309,027.00 | | ($10,830.58) | $7,198.55 | $696.01 |
| 03/05/2020 | | | $209.10 | Escrow Disbursement | 03/01/2018 | $54,226.29 | | | ($209.10) | | | $309,027.00 | | ($11,039.68) | $7,198.55 | $696.01 |
| 03/30/2020 | | | $1,898.02 | Escrow Disbursement | 03/01/2018 | $54,226.29 | | | ($1,898.02) | | | $309,027.00 | | ($12,937.70) | $7,198.55 | $696.01 |
| 03/31/2020 | | | $824.00 | Escrow Disbursement | 03/01/2018 | $54,226.29 | | | ($824.00) | | | $309,027.00 | | ($13,761.70) | $7,198.55 | $696.01 |
| 04/01/2020 | $2,173.93 | | | Contractual Payment Due | 03/01/2018 | $56,400.22 | | | | | | $309,027.00 | | ($13,761.70) | $7,198.55 | $696.01 |
| 04/03/2020 | | | $209.10 | Escrow Disbursement | 03/01/2018 | $56,400.22 | | | ($209.10) | | | $309,027.00 | | ($13,970.80) | $7,198.55 | $696.01 |
| 04/21/2020 | | | $200.00 | Attorney Fees | 03/01/2018 | $56,400.22 | | | | $200.00 | | $309,027.00 | | ($13,970.80) | $7,398.55 | $696.01 |
| 05/01/2020 | $2,173.93 | | | Contractual Payment Due | 03/01/2018 | $58,574.15 | | | | | | $309,027.00 | | ($13,970.80) | $7,398.55 | $696.01 |
| 05/05/2020 | | | $205.17 | Escrow Disbursement | 03/01/2018 | $58,574.15 | | | ($205.17) | | | $309,027.00 | | ($14,175.97) | $7,398.55 | $696.01 |
| 05/11/2020 | | $2,178.00 | | Funds Received | 03/01/2018 | $58,574.15 | | | | | $2,178.00 | $309,027.00 | | ($14,175.97) | $7,398.55 | $2,874.01 |
| 05/11/2020 | | | | Payment from Suspense | 04/01/2018 | $56,416.10 | $428.20 | $1,158.85 | $571.00 | | ($2,158.05) | $308,598.80 | | ($13,604.97) | $7,398.55 | $715.96 |
| 06/01/2020 | $2,173.93 | | | Contractual Payment Due | 04/01/2018 | $58,590.03 | | | | | | $308,598.80 | | ($13,604.97) | $7,398.55 | $715.96 |
| 06/05/2020 | | | $205.17 | Escrow Disbursement | 04/01/2018 | $58,590.03 | | | ($205.17) | | | $308,598.80 | | ($13,810.14) | $7,398.55 | $715.96 |
| 07/01/2020 | $2,173.93 | | | Contractual Payment Due | 04/01/2018 | $60,763.96 | | | | | | $308,598.80 | | ($13,810.14) | $7,398.55 | $715.96 |
| 07/02/2020 | | | $205.17 | Escrow Disbursement | 04/01/2018 | $60,763.96 | | | ($205.17) | | | $308,598.80 | | ($14,015.31) | $7,398.55 | $715.96 |
| 07/21/2020 | | $2,190.00 | | Funds Received | 04/01/2018 | $60,763.96 | | | | | $2,190.00 | $308,598.80 | | ($14,015.31) | $7,398.55 | $2,905.96 |
| 07/21/2020 | | | | Payment from Suspense | 05/01/2018 | $58,605.91 | $429.80 | $1,157.25 | $571.00 | | ($2,158.05) | $308,169.00 | | ($13,444.31) | $7,398.55 | $747.91 |
| 07/22/2020 | | $2,190.00 | | Funds Received | 05/01/2018 | $58,605.91 | | | | | $2,190.00 | $308,169.00 | | ($13,444.31) | $7,398.55 | $2,937.91 |
| 07/22/2020 | | | | Payment from Suspense | 06/01/2018 | $56,442.94 | $431.42 | $1,155.63 | $575.92 | | ($2,162.97) | $307,737.58 | | ($12,868.39) | $7,398.55 | $774.94 |
| 08/01/2020 | $2,173.93 | | | Contractual Payment Due | 06/01/2018 | $58,616.87 | | | | | | $307,737.58 | | ($12,868.39) | $7,398.55 | $774.94 |
| 08/05/2020 | | | $205.17 | Escrow Disbursement | 06/01/2018 | $58,616.87 | | | ($205.17) | | | $307,737.58 | | ($13,073.56) | $7,398.55 | $774.94 |
| 09/01/2020 | $2,173.93 | | | Contractual Payment Due | 06/01/2018 | $60,790.80 | | | | | | $307,737.58 | | ($13,073.56) | $7,398.55 | $774.94 |
| 09/04/2020 | | | $205.17 | Escrow Disbursement | 06/01/2018 | $60,790.80 | | | ($205.17) | | | $307,737.58 | | ($13,278.73) | $7,398.55 | $774.94 |
| 10/01/2020 | $2,173.93 | | | Contractual Payment Due | 06/01/2018 | $62,964.73 | | | | | | $307,737.58 | | ($13,278.73) | $7,398.55 | $774.94 |
| 10/05/2020 | | | $205.17 | Escrow Disbursement | 06/01/2018 | $62,964.73 | | | ($205.17) | | | $307,737.58 | | ($13,483.90) | $7,398.55 | $774.94 |
| 11/01/2020 | $2,173.93 | | | Contractual Payment Due | 06/01/2018 | $65,138.66 | | | | | | $307,737.58 | | ($13,483.90) | $7,398.55 | $774.94 |
| 11/05/2020 | | | $205.17 | Escrow Disbursement | 06/01/2018 | $65,138.66 | | | ($205.17) | | | $307,737.58 | | ($13,689.07) | $7,398.55 | $774.94 |
| 11/18/2020 | | $4,380.00 | | Funds Received | 06/01/2018 | $65,138.66 | | | | | $4,380.00 | $307,737.58 | | ($13,689.07) | $7,398.55 | $5,154.94 |
| 11/18/2020 | | | | Payment from Suspense | 07/01/2018 | $62,975.69 | $433.03 | $1,154.02 | $575.92 | | ($2,162.97) | $307,304.55 | | ($13,113.15) | $7,398.55 | $2,991.97 |
| 11/18/2020 | | | | Payment from Suspense | 08/01/2018 | $60,812.72 | $434.66 | $1,152.39 | $575.92 | | ($2,162.97) | $306,869.89 | | ($12,537.23) | $7,398.55 | $829.00 |
| 11/24/2020 | | | $1,934.25 | Escrow Disbursement | 08/01/2018 | $60,812.72 | | | ($1,934.25) | | | $306,869.89 | | ($14,471.48) | $7,398.55 | $829.00 |
| 11/25/2020 | | $524.42 | | Funds Received | 08/01/2018 | $60,812.72 | | | | | $524.42 | $306,869.89 | | ($14,471.48) | $7,398.55 | $1,353.42 |
| 12/01/2020 | $2,178.22 | | | Contractual Payment Due | 08/01/2018 | $62,990.94 | | | | | | $306,869.89 | | ($14,471.48) | $7,398.55 | $1,353.42 |
| 12/04/2020 | | | $205.17 | Escrow Disbursement | 08/01/2018 | $62,990.94 | | | ($205.17) | | | $306,869.89 | | ($14,676.65) | $7,398.55 | $1,353.42 |
| 01/01/2021 | $2,178.22 | | | Contractual Payment Due | 08/01/2018 | $65,169.16 | | | | | | $306,869.89 | | ($14,676.65) | $7,398.55 | $1,353.42 |
| 01/05/2021 | | | $205.17 | Escrow Disbursement | 08/01/2018 | $65,169.16 | | | ($205.17) | | | $306,869.89 | | ($14,881.82) | $7,398.55 | $1,353.42 |
| 01/15/2021 | | $1,386.24 | | Funds Received | 08/01/2018 | $65,169.16 | | | | | $1,386.24 | $306,869.89 | | ($14,881.82) | $7,398.55 | $2,739.66 |
| 01/19/2021 | | | $63.48 | Late Charges | 08/01/2018 | $65,169.16 | | | | $63.48 | | $306,869.89 | | ($14,881.82) | $7,462.03 | $2,739.66 |
| 01/21/2021 | | | | Payment from Suspense | 09/01/2018 | $63,006.19 | $436.29 | $1,150.76 | $575.92 | | ($2,162.97) | $306,433.60 | | ($14,305.90) | $7,462.03 | $576.69 |
| 02/01/2021 | $2,178.22 | | | Contractual Payment Due | 09/01/2018 | $65,184.41 | | | | | | $306,433.60 | | ($14,305.90) | $7,462.03 | $576.69 |
| 02/05/2021 | | | $205.17 | Escrow Disbursement | 09/01/2018 | $65,184.41 | | | ($205.17) | | | $306,433.60 | | ($14,511.07) | $7,462.03 | $576.69 |
| 02/16/2021 | | | $63.48 | Late Charges | 09/01/2018 | $65,184.41 | | | | $63.48 | | $306,433.60 | | ($14,511.07) | $7,525.51 | $576.69 |
| 02/16/2021 | | $1,368.00 | | Funds Received | 09/01/2018 | $65,184.41 | | | | | $1,368.00 | $306,433.60 | | ($14,511.07) | $7,525.51 | $1,944.69 |
| 03/01/2021 | $2,178.22 | | | Contractual Payment Due | 09/01/2018 | $67,362.63 | | | | | | $306,433.60 | | ($14,511.07) | $7,525.51 | $1,944.69 |
| 03/05/2021 | | | $205.17 | Escrow Disbursement | 09/01/2018 | $67,362.63 | | | ($205.17) | | | $306,433.60 | | ($14,716.24) | $7,525.51 | $1,944.69 |
| 03/16/2021 | | | $63.48 | Late Charges | 09/01/2018 | $67,362.63 | | | | $63.48 | | $306,433.60 | | ($14,716.24) | $7,588.99 | $1,944.69 |

EXHIBIT 1

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 03/16/2021 | | $149.00 | | Funds Received | 09/01/2018 | $67,362.63 | | | | | $149.00 | $306,433.60 | | ($14,716.24) | $7,588.99 | $2,093.69 |
| 03/18/2021 | | | $1,934.25 | Escrow Disbursement | 09/01/2018 | $67,362.63 | | | ($1,934.25) | | | $306,433.60 | | ($16,650.49) | $7,588.99 | $2,093.69 |
| 04/01/2021 | $2,178.22 | | | Contractual Payment Due | 09/01/2018 | $69,540.85 | | | | | | $306,433.60 | | ($16,650.49) | $7,588.99 | $2,093.69 |
| 04/01/2021 | | | $832.00 | Escrow Disbursement | 09/01/2018 | $69,540.85 | | | ($832.00) | | | $306,433.60 | | ($17,482.49) | $7,588.99 | $2,093.69 |
| 04/05/2021 | | | $205.17 | Escrow Disbursement | 09/01/2018 | $69,540.85 | | | ($205.17) | | | $306,433.60 | | ($17,687.66) | $7,588.99 | $2,093.69 |
| 04/16/2021 | | | $63.48 | Late Charges | 09/01/2018 | $69,540.85 | | | | $63.48 | | $306,433.60 | | ($17,687.66) | $7,652.47 | $2,093.69 |
| 05/01/2021 | $2,178.22 | | | Contractual Payment Due | 09/01/2018 | $71,719.07 | | | | | | $306,433.60 | | ($17,687.66) | $7,652.47 | $2,093.69 |
| 05/05/2021 | | | $201.07 | Escrow Disbursement | 09/01/2018 | $71,719.07 | | | ($201.07) | | | $306,433.60 | | ($17,888.73) | $7,652.47 | $2,093.69 |
| 05/13/2021 | | | $650.00 | Attorney Fees | 09/01/2018 | $71,719.07 | | | | $650.00 | | $306,433.60 | | ($17,888.73) | $8,302.47 | $2,093.69 |
| 05/13/2021 | | | $188.00 | Attorney Costs | 09/01/2018 | $71,719.07 | | | | $188.00 | | $306,433.60 | | ($17,888.73) | $8,490.47 | $2,093.69 |
| 05/14/2021 | | $492.75 | | Funds Received | 09/01/2018 | $71,719.07 | | | | | $492.75 | $306,433.60 | | ($17,888.73) | $8,490.47 | $2,586.44 |
| 05/17/2021 | | | | Payment from Suspense | 10/01/2018 | $69,556.10 | $437.92 | $1,149.13 | $575.92 | | ($2,162.97) | $305,995.68 | | ($17,312.81) | $8,490.47 | $423.47 |
| 06/01/2021 | $2,178.22 | | | Contractual Payment Due | 10/01/2018 | $71,734.32 | | | | | | $305,995.68 | | ($17,312.81) | $8,490.47 | $423.47 |
| 06/04/2021 | | | $201.07 | Escrow Disbursement | 10/01/2018 | $71,734.32 | | | ($201.07) | | | $305,995.68 | | ($17,513.88) | $8,490.47 | $423.47 |
| 07/01/2021 | $2,178.22 | | | Contractual Payment Due | 10/01/2018 | $73,912.54 | | | | | | $305,995.68 | | ($17,513.88) | $8,490.47 | $423.47 |
| 07/02/2021 | | | $201.07 | Escrow Disbursement | 10/01/2018 | $73,912.54 | | | ($201.07) | | | $305,995.68 | | ($17,714.95) | $8,490.47 | $423.47 |
| 07/14/2021 | | $1,159.20 | | Funds Received | 10/01/2018 | $73,912.54 | | | | | $1,159.20 | $305,995.68 | | ($17,714.95) | $8,490.47 | $1,582.67 |
| 08/01/2021 | $2,178.22 | | | Contractual Payment Due | 10/01/2018 | $76,090.76 | | | | | | $305,995.68 | | ($17,714.95) | $8,490.47 | $1,582.67 |
| 08/05/2021 | | | $201.07 | Escrow Disbursement | 10/01/2018 | $76,090.76 | | | ($201.07) | | | $305,995.68 | | ($17,916.02) | $8,490.47 | $1,582.67 |
| 08/18/2021 | | $744.80 | | Funds Received | 10/01/2018 | $76,090.76 | | | | | $744.80 | $305,995.68 | | ($17,916.02) | $8,490.47 | $2,327.47 |
| 08/20/2021 | | $5,820.88 | | Funds Received | 10/01/2018 | $76,090.76 | | | | | $5,820.88 | $305,995.68 | | ($17,916.02) | $8,490.47 | $8,148.35 |
| 08/24/2021 | | | | Payment from Suspense | 11/01/2018 | $73,927.79 | $439.57 | $1,147.48 | $575.92 | | ($2,162.97) | $305,556.11 | | ($17,340.10) | $8,490.47 | $5,985.38 |
| 08/25/2021 | | | | Payment from Suspense | 12/01/2018 | $71,764.82 | $441.21 | $1,145.84 | $575.92 | | ($2,162.97) | $305,114.90 | | ($16,764.18) | $8,490.47 | $3,822.41 |
| 09/01/2021 | $2,178.22 | | | Contractual Payment Due | 12/01/2018 | $73,943.04 | | | | | | $305,114.90 | | ($16,764.18) | $8,490.47 | $3,822.41 |
| 09/03/2021 | | | $201.07 | Escrow Disbursement | 12/01/2018 | $73,943.04 | | | ($201.07) | | | $305,114.90 | | ($16,965.25) | $8,490.47 | $3,822.41 |
| 09/10/2021 | | $2,178.22 | | Funds Received | 01/01/2019 | $71,780.07 | $442.87 | $1,144.18 | $575.92 | | $15.25 | $304,672.03 | | ($16,389.33) | $8,490.47 | $3,837.66 |
| 09/14/2021 | | $744.80 | | Funds Received | 01/01/2019 | $71,780.07 | | | | | $744.80 | $304,672.03 | | ($16,389.33) | $8,490.47 | $4,582.46 |
| 09/15/2021 | | | | Payment from Suspense | 02/01/2019 | $69,617.10 | $444.53 | $1,142.52 | $575.92 | | ($2,162.97) | $304,227.50 | | ($15,813.41) | $8,490.47 | $2,419.49 |
| 10/01/2021 | $2,178.22 | | | Contractual Payment Due | 02/01/2019 | $71,795.32 | | | | | | $304,227.50 | | ($15,813.41) | $8,490.47 | $2,419.49 |
| 10/05/2021 | | | $201.07 | Escrow Disbursement | 02/01/2019 | $71,795.32 | | | ($201.07) | | | $304,227.50 | | ($16,014.48) | $8,490.47 | $2,419.49 |
| 10/21/2021 | | $2,189.00 | | Funds Received | 03/01/2019 | $69,632.35 | $446.20 | $1,140.85 | $575.92 | | $26.03 | $303,781.30 | | ($15,438.56) | $8,490.47 | $2,445.52 |
| 11/01/2021 | $2,189.60 | | | Contractual Payment Due | 03/01/2019 | $71,821.95 | | | | | | $303,781.30 | | ($15,438.56) | $8,490.47 | $2,445.52 |
| 11/05/2021 | | | $201.07 | Escrow Disbursement | 03/01/2019 | $71,821.95 | | | ($201.07) | | | $303,781.30 | | ($15,639.63) | $8,490.47 | $2,445.52 |
| 11/16/2021 | | $733.20 | | Funds Received | 03/01/2019 | $71,821.95 | | | | | $733.20 | $303,781.30 | | ($15,639.63) | $8,490.47 | $3,178.72 |
| 11/22/2021 | | | $1,948.91 | Escrow Disbursement | 03/01/2019 | $71,821.95 | | | ($1,948.91) | | | $303,781.30 | | ($17,588.54) | $8,490.47 | $3,178.72 |
| 12/01/2021 | $2,189.60 | | | Contractual Payment Due | 03/01/2019 | $74,011.55 | | | | | | $303,781.30 | | ($17,588.54) | $8,490.47 | $3,178.72 |
| 12/03/2021 | | | $201.07 | Escrow Disbursement | 03/01/2019 | $74,011.55 | | | ($201.07) | | | $303,781.30 | | ($17,789.61) | $8,490.47 | $3,178.72 |
| 12/13/2021 | | | $50.00 | RLF/NOD ORD GRN | 03/01/2019 | $74,011.55 | | | | $50.00 | | $303,781.30 | | ($17,789.61) | $8,540.47 | $3,178.72 |
| 12/22/2021 | | $5,206.42 | | Funds Received | 04/01/2019 | $71,832.77 | $447.87 | $1,139.18 | $591.73 | | $3,027.64 | $303,333.43 | | ($17,197.88) | $8,540.47 | $6,206.36 |
| 12/22/2021 | | | | Payment from Suspense | 05/01/2019 | $69,653.99 | $449.55 | $1,137.50 | $591.73 | | ($2,178.78) | $302,883.88 | | ($16,606.15) | $8,540.47 | $4,027.58 |
| 12/22/2021 | | | | Payment from Suspense | 06/01/2019 | $67,475.21 | $451.24 | $1,135.81 | $591.73 | | ($2,178.78) | $302,432.64 | | ($16,014.42) | $8,540.47 | $1,848.80 |
| 01/01/2022 | $2,189.60 | | | Contractual Payment Due | 06/01/2019 | $69,664.81 | | | | | | $302,432.64 | | ($16,014.42) | $8,540.47 | $1,848.80 |
| 01/05/2022 | | | $201.07 | Escrow Disbursement | 06/01/2019 | $69,664.81 | | | ($201.07) | | | $302,432.64 | | ($16,215.49) | $8,540.47 | $1,848.80 |
| 02/01/2022 | $2,189.60 | | | Contractual Payment Due | 06/01/2019 | $71,854.41 | | | | | | $302,432.64 | | ($16,215.49) | $8,540.47 | $1,848.80 |
| 02/04/2022 | | | $201.07 | Escrow Disbursement | 06/01/2019 | $71,854.41 | | | ($201.07) | | | $302,432.64 | | ($16,416.56) | $8,540.47 | $1,848.80 |
| 03/01/2022 | $2,189.60 | | | Contractual Payment Due | 06/01/2019 | $74,044.01 | | | | | | $302,432.64 | | ($16,416.56) | $8,540.47 | $1,848.80 |
| 03/04/2022 | | | $201.07 | Escrow Disbursement | 06/01/2019 | $74,044.01 | | | ($201.07) | | | $302,432.64 | | ($16,617.63) | $8,540.47 | $1,848.80 |
| 03/22/2022 | | | $1,948.91 | Escrow Disbursement | 06/01/2019 | $74,044.01 | | | ($1,948.91) | | | $302,432.64 | | ($18,566.54) | $8,540.47 | $1,848.80 |
| 03/30/2022 | | | $880.00 | Escrow Disbursement | 06/01/2019 | $74,044.01 | | | ($880.00) | | | $302,432.64 | | ($19,446.54) | $8,540.47 | $1,848.80 |
| 04/01/2022 | $2,189.60 | | | Contractual Payment Due | 06/01/2019 | $76,233.61 | | | | | | $302,432.64 | | ($19,446.54) | $8,540.47 | $1,848.80 |
| 04/05/2022 | | | $201.07 | Escrow Disbursement | 06/01/2019 | $76,233.61 | | | ($201.07) | | | $302,432.64 | | ($19,647.61) | $8,540.47 | $1,848.80 |

EXHIBIT 1

**Part 5 : Loan Payment History from First Date of Default**

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 05/01/2022 | $2,189.60 | | | Contractual Payment Due | 06/01/2019 | $78,423.21 | | | | | | $302,432.64 | | ($19,647.61) | $8,540.47 | $1,848.80 |
| 05/05/2022 | | | $196.77 | Escrow Disbursement | 06/01/2019 | $78,423.21 | | | | ($196.77) | | $302,432.64 | | ($19,844.38) | $8,540.47 | $1,848.80 |
| 05/13/2022 | | $994.00 | | Funds Received | 06/01/2019 | $78,423.21 | | | | | $994.00 | $302,432.64 | | ($19,844.38) | $8,540.47 | $2,842.80 |
| 05/16/2022 | | | | Payment from Suspense | 07/01/2019 | $76,244.43 | $452.93 | $1,134.12 | $591.73 | | ($2,178.78) | $301,979.71 | | ($19,252.65) | $8,540.47 | $664.02 |
| 05/26/2022 | | | $100.00 | RLF/NOD ORD GRN | 07/01/2019 | $76,244.43 | | | | $100.00 | | $301,979.71 | | ($19,252.65) | $8,640.47 | $664.02 |
| 06/01/2022 | $2,194.27 | | | Contractual Payment Due | 07/01/2019 | $78,438.70 | | | | | | $301,979.71 | | ($19,252.65) | $8,640.47 | $664.02 |
| 06/03/2022 | | | $196.77 | Escrow Disbursement | 07/01/2019 | $78,438.70 | | | | ($196.77) | | $301,979.71 | | ($19,449.42) | $8,640.47 | $664.02 |
| 07/01/2022 | $2,194.27 | | | Contractual Payment Due | 07/01/2019 | $80,632.97 | | | | | | $301,979.71 | | ($19,449.42) | $8,640.47 | $664.02 |
| 07/01/2022 | | | $2,189.00 | Funds Received | 07/01/2019 | $80,632.97 | | | | | $2,189.00 | $301,979.71 | | ($19,449.42) | $8,640.47 | $2,853.02 |
| 07/05/2022 | | | $196.77 | Escrow Disbursement | 07/01/2019 | $80,632.97 | | | | ($196.77) | | $301,979.71 | | ($19,646.19) | $8,640.47 | $2,853.02 |
| 07/06/2022 | | | | Payment from Suspense | 08/01/2019 | $78,459.04 | $454.63 | $1,132.42 | $586.88 | | ($2,173.93) | $301,525.08 | | ($19,059.31) | $8,640.47 | $679.09 |
| 08/01/2022 | $2,194.27 | | | Contractual Payment Due | 08/01/2019 | $80,653.31 | | | | | | $301,525.08 | | ($19,059.31) | $8,640.47 | $679.09 |
| 08/04/2022 | | | $20.00 | Property Inspection Fee | 08/01/2019 | $80,653.31 | | | | $20.00 | | $301,525.08 | | ($19,059.31) | $8,660.47 | $679.09 |
| 08/05/2022 | | | $196.77 | Escrow Disbursement | 08/01/2019 | $80,653.31 | | | | ($196.77) | | $301,525.08 | | ($19,256.08) | $8,660.47 | $679.09 |
| 08/09/2022 | | | $125.00 | Posting Notice | 08/01/2019 | $80,653.31 | | | | $125.00 | | $301,525.08 | | ($19,256.08) | $8,785.47 | $679.09 |
| 08/09/2022 | | | $365.00 | Publication Fee | 08/01/2019 | $80,653.31 | | | | $365.00 | | $301,525.08 | | ($19,256.08) | $9,150.47 | $679.09 |
| 08/10/2022 | | | $75.00 | Recording Costs | 08/01/2019 | $80,653.31 | | | | $75.00 | | $301,525.08 | | ($19,256.08) | $9,225.47 | $679.09 |
| 08/10/2022 | | | $30.00 | Filing Costs | 08/01/2019 | $80,653.31 | | | | $30.00 | | $301,525.08 | | ($19,256.08) | $9,255.47 | $679.09 |
| 08/12/2022 | | | $196.34 | Mail Costs | 08/01/2019 | $80,653.31 | | | | $196.34 | | $301,525.08 | | ($19,256.08) | $9,451.81 | $679.09 |
| 09/01/2022 | $2,194.27 | | | Contractual Payment Due | 08/01/2019 | $82,847.58 | | | | | | $301,525.08 | | ($19,256.08) | $9,451.81 | $679.09 |
| 09/02/2022 | | | $196.77 | Escrow Disbursement | 08/01/2019 | $82,847.58 | | | | ($196.77) | | $301,525.08 | | ($19,452.85) | $9,451.81 | $679.09 |
| 09/06/2022 | | | $20.00 | Property Inspection Fee | 08/01/2019 | $82,847.58 | | | | $20.00 | | $301,525.08 | | ($19,452.85) | $9,471.81 | $679.09 |
| 09/13/2022 | | ($679.09) | | Suspense Adjustment | 08/01/2019 | $82,847.58 | | | | | ($679.09) | $301,525.08 | | ($19,452.85) | $9,471.81 | ($0.00) |
| 09/29/2022 | | | $6.42 | Posting Notice | 08/01/2019 | $82,847.58 | | | | $6.42 | | $301,525.08 | | ($19,452.85) | $9,478.23 | ($0.00) |
| 09/30/2022 | | | $100.00 | Postponement | 08/01/2019 | $82,847.58 | | | | $100.00 | | $301,525.08 | | ($19,452.85) | $9,578.23 | ($0.00) |
| 10/01/2022 | $2,181.97 | | | Contractual Payment Due | 08/01/2019 | $85,029.55 | | | | | | $301,525.08 | | ($19,452.85) | $9,578.23 | ($0.00) |
| 10/03/2022 | | | $20.00 | Property Inspection Fee | 08/01/2019 | $85,029.55 | | | | $20.00 | | $301,525.08 | | ($19,452.85) | $9,598.23 | ($0.00) |
| 10/03/2022 | | | $30.00 | Photos | 08/01/2019 | $85,029.55 | | | | $30.00 | | $301,525.08 | | ($19,452.85) | $9,628.23 | ($0.00) |
| 10/05/2022 | | | $196.77 | Escrow Disbursement | 08/01/2019 | $85,029.55 | | | | ($196.77) | | $301,525.08 | | ($19,649.62) | $9,628.23 | ($0.00) |
| 10/14/2022 | | $2,189.00 | | Funds Received | 08/01/2019 | $85,029.55 | | | | | $2,189.00 | $301,525.08 | | ($19,649.62) | $9,628.23 | $2,189.00 |
| 10/18/2022 | | | | Payment from Suspense | 09/01/2019 | $82,855.62 | $456.33 | $1,130.72 | $586.88 | | ($2,173.93) | $301,068.75 | | ($19,062.74) | $9,628.23 | $15.07 |
| 10/19/2022 | | | $550.00 | Attorney Fees | 09/01/2019 | $82,855.62 | | | | $550.00 | | $301,068.75 | | ($19,062.74) | $10,178.23 | $15.07 |
| 10/26/2022 | | | $6.42 | Mail Costs | 09/01/2019 | $82,855.62 | | | | $6.42 | | $301,068.75 | | ($19,062.74) | $10,184.65 | $15.07 |
| 10/26/2022 | | | $100.00 | Postponement | 09/01/2019 | $82,855.62 | | | | $100.00 | | $301,068.75 | | ($19,062.74) | $10,284.65 | $15.07 |
| 11/01/2022 | $2,181.97 | | | Contractual Payment Due | 09/01/2019 | $85,037.59 | | | | | | $301,068.75 | | ($19,062.74) | $10,284.65 | $15.07 |
| 11/04/2022 | | | $196.77 | Escrow Disbursement | 09/01/2019 | $85,037.59 | | | | ($196.77) | | $301,068.75 | | ($19,259.51) | $10,284.65 | $15.07 |
| 11/14/2022 | | $2,189.00 | | Funds Received | 09/01/2019 | $85,037.59 | | | | | $2,189.00 | $301,068.75 | | ($19,259.51) | $10,284.65 | $2,204.07 |
| 11/16/2022 | | | | Payment from Suspense | 10/01/2019 | $82,863.66 | $458.04 | $1,129.01 | $586.88 | | ($2,173.93) | $300,610.71 | | ($18,672.63) | $10,284.65 | $30.14 |
| 11/23/2022 | | | $1,972.76 | Escrow Disbursement | 10/01/2019 | $82,863.66 | | | | ($1,972.76) | | $300,610.71 | | ($20,645.39) | $10,284.65 | $30.14 |
| 12/01/2022 | $2,181.97 | | | Contractual Payment Due | 10/01/2019 | $85,045.63 | | | | | | $300,610.71 | | ($20,645.39) | $10,284.65 | $30.14 |
| 12/05/2022 | | | $196.77 | Escrow Disbursement | 10/01/2019 | $85,045.63 | | | | ($196.77) | | $300,610.71 | | ($20,842.16) | $10,284.65 | $30.14 |
| 12/07/2022 | | | $400.00 | Attorney Fees | 10/01/2019 | $85,045.63 | | | | $400.00 | | $300,610.71 | | ($20,842.16) | $10,684.65 | $30.14 |
| 12/07/2022 | | | $250.00 | Attorney Fees | 10/01/2019 | $85,045.63 | | | | $250.00 | | $300,610.71 | | ($20,842.16) | $10,934.65 | $30.14 |
| 01/01/2023 | $2,181.97 | | | Contractual Payment Due | 10/01/2019 | $87,227.60 | | | | | | $300,610.71 | | ($20,842.16) | $10,934.65 | $30.14 |
| 01/05/2023 | | | $196.77 | Escrow Disbursement | 10/01/2019 | $87,227.60 | | | | ($196.77) | | $300,610.71 | | ($21,038.93) | $10,934.65 | $30.14 |
| 01/24/2023 | | | $6.60 | Mail Costs | 10/01/2019 | $87,227.60 | | | | $6.60 | | $300,610.71 | | ($21,038.93) | $10,941.25 | $30.14 |
| 01/25/2023 | | | $100.00 | Postponement | 10/01/2019 | $87,227.60 | | | | $100.00 | | $300,610.71 | | ($21,038.93) | $11,041.25 | $30.14 |
| 02/01/2023 | $2,181.97 | | | Contractual Payment Due | 10/01/2019 | $89,409.57 | | | | | | $300,610.71 | | ($21,038.93) | $11,041.25 | $30.14 |
| 02/03/2023 | | | $196.77 | Escrow Disbursement | 10/01/2019 | $89,409.57 | | | | ($196.77) | | $300,610.71 | | ($21,235.70) | $11,041.25 | $30.14 |
| 03/01/2023 | $2,181.97 | | | Contractual Payment Due | 10/01/2019 | $91,591.54 | | | | | | $300,610.71 | | ($21,235.70) | $11,041.25 | $30.14 |
| 03/03/2023 | | | $1,050.00 | Attorney Fees | 10/01/2019 | $91,591.54 | | | | $1,050.00 | | $300,610.71 | | ($21,235.70) | $12,091.25 | $30.14 |

EXHIBIT 1
Mortgage Proof of Claim Attachment

**Part 5 : Loan Payment History from First Date of Default**

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 03/03/2023 | | | $188.00 | Attorney Costs | 10/01/2019 | $91,591.54 | | | | $188.00 | | $300,610.71 | | ($21,235.70) | $12,279.25 | $30.14 |
| 03/03/2023 | | | $196.77 | Escrow Disbursement | 10/01/2019 | $91,591.54 | | | ($196.77) | | | $300,610.71 | | ($21,432.47) | $12,279.25 | $30.14 |
| 03/18/2023 | | | $20.00 | Property Inspection Fee | 10/01/2019 | $91,591.54 | | | | $20.00 | | $300,610.71 | | ($21,432.47) | $12,299.25 | $30.14 |
| 03/22/2023 | | | $1,972.76 | Escrow Disbursement | 10/01/2019 | $91,591.54 | | | ($1,972.76) | | | $300,610.71 | | ($23,405.23) | $12,299.25 | $30.14 |
| 03/24/2023 | | $8,815.00 | | Funds Received | 10/01/2019 | $91,591.54 | | | | | $8,815.00 | $300,610.71 | | ($23,405.23) | $12,299.25 | $8,845.14 |
| 03/28/2023 | | | | Payment from Suspense | 11/01/2019 | $89,417.61 | $459.76 | $1,127.29 | $586.88 | | ($2,173.93) | $300,150.95 | | ($22,818.35) | $12,299.25 | $6,671.21 |
| 03/29/2023 | | | | Payment from Suspense | 12/01/2019 | $87,243.68 | $461.48 | $1,125.57 | $586.88 | | ($2,173.93) | $299,689.47 | | ($22,231.47) | $12,299.25 | $4,497.28 |
| 03/30/2023 | | | $986.00 | Escrow Disbursement | 12/01/2019 | $87,243.68 | | | ($986.00) | | | $299,689.47 | | ($23,217.47) | $12,299.25 | $4,497.28 |
| 03/30/2023 | | | | Payment from Suspense | 01/01/2020 | $85,069.75 | $463.21 | $1,123.84 | $586.88 | | ($2,173.93) | $299,226.26 | | ($22,630.59) | $12,299.25 | $2,323.35 |
| 03/31/2023 | | | | Payment from Suspense | 02/01/2020 | $82,895.82 | $464.95 | $1,122.10 | $586.88 | | ($2,173.93) | $298,761.31 | | ($22,043.71) | $12,299.25 | $149.42 |
| 04/01/2023 | $2,181.97 | | | Contractual Payment Due | 02/01/2020 | $85,077.79 | | | | | | $298,761.31 | | ($22,043.71) | $12,299.25 | $149.42 |
| 04/05/2023 | | | $196.77 | Escrow Disbursement | 02/01/2020 | $85,077.79 | | | ($196.77) | | | $298,761.31 | | ($22,240.48) | $12,299.25 | $149.42 |
| 05/01/2023 | $2,181.97 | | | Contractual Payment Due | 02/01/2020 | $87,259.76 | | | | | | $298,761.31 | | ($22,240.48) | $12,299.25 | $149.42 |
| 05/05/2023 | | | $192.27 | Escrow Disbursement | 02/01/2020 | $87,259.76 | | | ($192.27) | | | $298,761.31 | | ($22,432.75) | $12,299.25 | $149.42 |
| 05/15/2023 | | $2,181.97 | | Funds Received | 03/01/2020 | $85,085.83 | $466.70 | $1,120.35 | $586.88 | | $8.04 | $298,294.61 | | ($21,845.87) | $12,299.25 | $157.46 |
| 06/01/2023 | $2,206.98 | | | Contractual Payment Due | 03/01/2020 | $87,292.81 | | | | | | $298,294.61 | | ($21,845.87) | $12,299.25 | $157.46 |
| 06/05/2023 | | | $192.27 | Escrow Disbursement | 03/01/2020 | $87,292.81 | | | ($192.27) | | | $298,294.61 | | ($22,038.14) | $12,299.25 | $157.46 |
| 06/15/2023 | | $2,206.98 | | Funds Received | 04/01/2020 | $85,118.88 | $468.45 | $1,118.60 | $586.88 | | $33.05 | $297,826.16 | | ($21,451.26) | $12,299.25 | $190.51 |
| 06/16/2023 | | ($25.01) | | Suspense Adjustment | 04/01/2020 | $85,118.88 | | | | | ($25.01) | $297,826.16 | | ($21,451.26) | $12,299.25 | $165.50 |
| 06/23/2023 | | | $13.20 | Mail Costs | 04/01/2020 | $85,118.88 | | | | $13.20 | | $297,826.16 | | ($21,451.26) | $12,312.45 | $165.50 |
| 06/23/2023 | | | $2,074.52 | Escrow Disbursement | 04/01/2020 | $85,118.88 | | | ($2,074.52) | | | $297,826.16 | | ($23,525.78) | $12,312.45 | $165.50 |
| 06/27/2023 | | | $100.00 | Postponement | 04/01/2020 | $85,118.88 | | | | $100.00 | | $297,826.16 | | ($23,525.78) | $12,412.45 | $165.50 |
| 07/01/2023 | $2,206.98 | | | Contractual Payment Due | 04/01/2020 | $87,325.86 | | | | | | $297,826.16 | | ($23,525.78) | $12,412.45 | $165.50 |
| 07/05/2023 | | | $192.27 | Escrow Disbursement | 04/01/2020 | $87,325.86 | | | ($192.27) | | | $297,826.16 | | ($23,718.05) | $12,412.45 | $165.50 |
| 08/01/2023 | $2,206.98 | | | Contractual Payment Due | 04/01/2020 | $89,532.84 | | | | | | $297,826.16 | | ($23,718.05) | $12,412.45 | $165.50 |
| 08/04/2023 | | | $192.27 | Escrow Disbursement | 04/01/2020 | $89,532.84 | | | ($192.27) | | | $297,826.16 | | ($23,910.32) | $12,412.45 | $165.50 |
| 08/15/2023 | | $2,206.98 | | Funds Received | 05/01/2020 | $87,358.91 | $470.20 | $1,116.85 | $586.88 | | $33.05 | $297,355.96 | | ($23,323.44) | $12,412.45 | $198.55 |
| 08/23/2023 | | ($198.55) | | Suspense Adjustment | 05/01/2020 | $87,358.91 | | | | | ($198.55) | $297,355.96 | | ($23,323.44) | $12,412.45 | ($0.00) |
| 09/01/2023 | $2,206.98 | | | Contractual Payment Due | 05/01/2020 | $89,565.89 | | | | | | $297,355.96 | | ($23,323.44) | $12,412.45 | ($0.00) |
| 09/01/2023 | | | $20.00 | Property Inspection Fee | 05/01/2020 | $89,565.89 | | | | $20.00 | | $297,355.96 | | ($23,323.44) | $12,412.45 | ($0.00) |
| 09/01/2023 | | | $213.75 | Attorney Fees | 05/01/2020 | $89,565.89 | | | | $213.75 | | $297,355.96 | | ($23,323.44) | $12,646.20 | ($0.00) |
| 09/05/2023 | | | $192.27 | Escrow Disbursement | 05/01/2020 | $89,565.89 | | | ($192.27) | | | $297,355.96 | | ($23,515.71) | $12,646.20 | ($0.00) |
| 09/05/2023 | | | | Bankruptcy Filed | 05/01/2020 | $89,565.89 | | | | | | $297,355.96 | | ($23,515.71) | $12,646.20 | ($0.00) |

EXHIBIT 1

Representation of Printed Document


**LOANCARE**

P.O. BOX 8068 | Virginia Beach, VA 23450 | 1.800.509.0183

# ANNUAL ESCROW ACCOUNT
# DISCLOSURE STATEMENT

**Statement Date:**    **10/05/23**

MAXIMO ARRIOLA
C/O BENJAMIN HESTON
NEXUS BANKRUPTCY
100 BAYVIEW CIR STE 100
NEWPORT BEACH CA  92660-2963

## Annual Escrow Account Disclosure Statement

| | |
|---|---|
| Loan Number: | |
| Property Address: | **4199 9TH STREET** |
| | **RIVERSIDE CA 92501** |
| Review Period: | **06/2023 to 09/2023** |
| Escrow Surplus: | **$0.00** |

## Current Mortgage Payment

| | |
|---|---|
| Principal and/or Interest: | **$1,587.05** |
| Escrow (Taxes and/or Insurance): | **$570.18** |
| Prorated Shortage: | **$16.70** |
| **Total Monthly Payment:** | **$2,173.93** |

## New Mortgage Payment

| | |
|---|---|
| Principal and/or Interest: | **$1,587.05** |
| Escrow (Taxes and/or Insurance): | **$603.23** |
| **Total New Monthly Payment:** | **$2,190.28** |
| **Effective Due Date:** | **10/01/2023** |

## Contact Us

**Customer Service/Pay-by-Phone**
1.800.509.0183*
*Calls are randomly monitored and recorded to ensure quality service.
**Hours**
Monday - Friday: 8 a.m. to 9 p.m. ET
Saturday: 8 a.m. to 3 p.m. ET

**Website:**
**www.LakeviewLoanServicing.MyLoanCare.com**

**Autodraft Customers:** If your mortgage payment amount has changed, we'll adjust your payment for you.

**Online Bill Payment Customers:** If your mortgage payment amount has changed, you will need to contact your financial services provider to adjust your payment.

## Account History

The following statement of activity in your escrow account from 06/2023 through 09/2023 displays actual activity as it occurred in your escrow account during that period. If your loan was transferred by another mortgage servicer, the prior projection information may not be included below.

| Month | Activity | Projected Amount | Actual Amount | Projected Escrow Balance | Actual Escrow Balance |
|---|---|---|---|---|---|
| | **Starting Balance** | | | $1,643.84 | $-21,845.87 |
| June | Deposit | $603.23 | $586.88* | $2,247.07 | $-21,258.99 |
| June | MIP/PMI Disbursement | $192.27 | $0.00* | $2,054.80 | $-21,258.99 |
| June | MIP/PMI Disbursement | $0.00 | $192.27* | $2,054.80 | $-21,451.26 |
| June | Supplemental Tax Disbursement | $0.00 | $2,074.52* | $2,054.80 | $-23,525.78 |
| July | Deposit | $603.23 | $0.00* | $2,658.03 | $-23,525.78 |
| July | MIP/PMI Disbursement | $192.27 | $0.00* | $2,465.76 | $-23,525.78 |
| July | MIP/PMI Disbursement | $0.00 | $192.27* | $2,465.76 | $-23,718.05 |
| August | Deposit | $603.23 | $586.88* | $3,068.99 | $-23,131.17 |
| August | MIP/PMI Disbursement | $192.27 | $0.00* | $2,876.72 | $-23,131.17 |
| August | MIP/PMI Disbursement | $0.00 | $192.27* | $2,876.72 | $-23,323.44 |
| September | Deposit | $603.23 | $24,496.84* E | $3,479.95 | $1,173.40 |
| September | MIP/PMI Disbursement | $192.27 | $0.00* E | $3,287.68 | $1,173.40 |
| September | MIP/PMI Disbursement | $0.00 | $192.27* | $3,287.68 | $981.13 |
| | Total Deposits | $2,412.92 | $25,670.60 | | |
| | Total Disbursements | $769.08 | $2,843.60 | | |
| | **Account Balance as of 09/30/2023** | | | | **$981.13** |

*An asterisk (\*) appearing next to the amount indicates a difference from projected activity either in the amount or the date. The letter "E" next to an amount indicates that the payment or disbursement has not yet occurred, but is estimated to occur on the date shown.*

THIS SPACE INTENTIONALLY LEFT BLANK

EXHIBIT A

Internet Reprint

Last year we anticipated that Disbursements would occur from the escrow account during the period equaling $7,238.76. Your lowest monthly escrow balance should not have exceeded $821.92, which is either 1/6 (also equal to no more than two months) of the total projected payments from the account as required by federal law or the reasonable amount required by state law or the amount required by your mortgage contract. Your actual lowest monthly balance was $-23,718.05. The items with an asterisk on your Account History may explain this. For further explanation, call our toll-free number shown under the Contact Us section on this statement.

## Total Anticipated Annual Disbursement

We anticipate paying the escrow items listed below on your behalf in the upcoming 12-month period. The dollar amount shown may be the last amount paid for that item, or we may project the amount due as defined by federal law.

| Tax | | | Insurance | | |
|---|---|---|---|---|---|
| Item | Annual Expense | Anticipated Date(s) of Payment | Item | Annual Expense | Anticipated Date(s) of Payment |
| County Tax Disbursement | $1,972.76 | November 2023 | MIP/PMI Disbursement | $192.27 | October 2023 |
| County Tax Disbursement | $1,972.76 | March 2024 | MIP/PMI Disbursement | $192.27 | November 2023 |
| | | | MIP/PMI Disbursement | $192.27 | December 2023 |
| | | | MIP/PMI Disbursement | $192.27 | January 2024 |
| | | | MIP/PMI Disbursement | $192.27 | February 2024 |
| | | | MIP/PMI Disbursement | $192.27 | March 2024 |
| | | | Hazard Insurance Disbursement | $986.00 | March 2024 |
| | | | MIP/PMI Disbursement | $192.27 | April 2024 |
| | | | MIP/PMI Disbursement | $192.27 | May 2024 |
| | | | MIP/PMI Disbursement | $192.27 | June 2024 |
| | | | MIP/PMI Disbursement | $192.27 | July 2024 |
| | | | MIP/PMI Disbursement | $192.27 | August 2024 |
| | | | MIP/PMI Disbursement | $192.27 | September 2024 |
| **Total Anticipated Annual Disbursement = $7,238.76** | | | | | |

## Account Projections

The following information covers your projected escrow account activity from 10/2023 to 09/2024. All payments we anticipate receiving as well as disbursements we anticipate making on your behalf are included, along with the Projected Escrow Account Balance, derived by carrying forward your current actual escrow balance. The required Escrow Account Balance displays the amount actually required to be on hand as specified by federal law, state law, or your mortgage documents, and may include a cushion of up to one-sixth of your annual disbursements. Please retain this statement for comparison with the actual activity in your account at the end of the next escrow analysis cycle.

| Month | Projected Payments | Disbursements | | Projected Escrow | Required Escrow |
|---|---|---|---|---|---|
| | Projected | Projected | Description | Account Balance | Account Balance |
| | | | *Beginning Balance* | **$981.13** | **$3,287.68** |
| October | $603.23 | $192.27 | MIP/PMI Disbursement | $1,392.09 | $3,698.64 |
| November | $603.23 | $192.27 | MIP/PMI Disbursement | $1,803.05 | $4,109.60 |
| November | | $1,972.76 | County Tax Disbursement | $-169.71 | $2,136.84 |
| December | $603.23 | $192.27 | MIP/PMI Disbursement | $241.25 | $2,547.80 |
| January | $603.23 | $192.27 | MIP/PMI Disbursement | $652.21 | $2,958.76 |
| February | $603.23 | $192.27 | MIP/PMI Disbursement | $1,063.17 | $3,369.72 |
| March | $603.23 | $192.27 | MIP/PMI Disbursement | $1,474.13 | $3,780.68 |
| March | | $1,972.76 | County Tax Disbursement | $-498.63 | $1,807.92 |
| March | | $986.00 | Hazard Insurance Disbursement | $-1,484.63 | $821.92 |
| April | $603.23 | $192.27 | MIP/PMI Disbursement | $-1,073.67 | $1,232.88 |
| May | $603.23 | $192.27 | MIP/PMI Disbursement | $-662.71 | $1,643.84 |
| June | $603.23 | $192.27 | MIP/PMI Disbursement | $-251.75 | $2,054.80 |
| July | $603.23 | $192.27 | MIP/PMI Disbursement | $159.21 | $2,465.76 |
| August | $603.23 | $192.27 | MIP/PMI Disbursement | $570.17 | $2,876.72 |
| September | $603.23 | $192.27 | MIP/PMI Disbursement | $981.13 | $3,287.68 |

Your Projected Escrow Account Balance as of 09/30/23 is $981.13. Your Required Beginning Escrow Balance according to this analysis should be $3,287.68. This means you have a surplus of $0.00. This surplus must be returned to you unless it is less than $50.00, in which case we have the additional option of keeping it and lowering your monthly payments accordingly. Due to the delinquent status of your account, we will retain your remaining surplus.

## Balance Your Escrow Account

Each year your account is reviewed to make sure there is enough money to pay your property taxes and/or insurance. Federal law allows us to require a minimum balance in your account. This cash reserve helps to cover any increase in taxes and/or insurance. Subject to state law limits, your minimum balance normally equals the amount of your escrow payments for about two months. The payments made to and from your escrow account last year help predict your account activity for next year. Last year's activity also helps predict what your lowest account balance is likely to be. To balance your escrow account, we compare what your lowest account balance will likely be next year with your minimum required balance. The difference between those two numbers tells us if you need to deposit additional funds or if we will provide a refund.

| | |
|---|---|
| $821.92 | Your minimum required balance |
| $-1,484.63 | Your projected lowest account balance for March |
| $0.00 | Your escrow account surplus/shortage |

EXHIBIT A

Representation of Printed Document



**LOANCARE**

### ANNUAL ESCROW ACCOUNT
### DISCLOSURE STATEMENT

**P.O. BOX 8068 | Virginia Beach, VA 23450 | 1.800.509.0183**

LoanCare is a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose. However, if you filed for bankruptcy, currently are in bankruptcy or received a discharge in bankruptcy, this communication is not an attempt to collect a debt, but is instead a legally required notice regarding your escrowed taxes and insurance.

| Private Mortgage Insurance Disclosure |
|---|

**Private Mortgage Insurance:** Your mortgage loan requires private mortgage insurance ("PMI"). PMI protects lenders and others against financial loss when borrowers default. Charges for the insurance are added to your loan payments. Under certain circumstances, federal law gives you the right to cancel PMI or requires that PMI automatically terminate. Cancellation or termination of PMI does not affect any obligation you may have to maintain other types of insurance.

**Borrower Requested Cancellation of PMI:** Under the Homeowners Protection Act of 1998, if your loan closed on or after July 29, 1999 as a single-family primary residence, you have the right to request that PMI be canceled on or after either of these dates: (1) the date the principal balance of your loan is first scheduled to reach 80 percent of the original value of the property or (2) the date the principal balance actually reaches 80 percent of the original value of the property. PMI will only be canceled on these dates if (1) you submit a written request for cancellation; (2) you have a good payment history; and (3) we receive, if requested and at your expense, evidence that the value of the property has not declined below its original value and certification that there are no subordinate liens on the property. A "good payment history" means no payments 60 or more days past due within two years and no payments 30 or more days past due within one year of the cancellation date. "Original value" means the lesser of the contract sales price of the property or the appraised value of the property at the time the loan was closed.

**Automatic Termination of PMI:** Under the Homeowners Protection Act of 1998, if your loan closed on or after July 29, 1999 as a single-family primary residence and if you are current on your loan payments, PMI will automatically terminate on the date the principal balance of your loan is first scheduled to reach 78 percent of the original value of the property. If you are not current on your loan payments as of that date, PMI will automatically terminate when you thereafter become current on your payments. In any event, PMI will not be required on your mortgage loan beyond the date that is the midpoint of the amortization period for the loan if you are current on your payments on that date. If your loan closed before July 29, 1999 or if it is not a single-family primary residence or second home: The conditions for canceling mortgage insurance for mortgages closed before July 29, 1999 are not statutory under federal law, they may be changed at any time (unless otherwise required by state law). To determine if you can cancel the PMI on your loan or for further information about PMI cancellation, contact us at P.O. Box 8068, Virginia Beach, Virginia 23450 or call 1.800.509.0183.

EXHIBIT A

Internet Reprint

REPRESENTATION OF PRINTED DOCUMENT



**LOANCARE**

3637 Sentara Way | Virginia Beach, VA 23452

## Understanding Your Escrow Changes

Over the past few years, we've worked to simplify our escrow statement. Now, understanding your escrow information is even easier. In this letter, we're breaking down your statement even further to explain the changes in your escrow account information.

 Read ahead to see your escrow payment breakdown and your projected disbursements

 Get answers to some of our most frequently asked questions about escrow accounts

 See how to view your escrow information online

### Your Payment Information

Your current total monthly mortgage payment $2,173.93. Your total amount due will change by $16.35. Your new total monthly payment will be $2,190.28, effective 10/01/2023.

### Your Escrow Surplus

Your projected escrow account balance as of 09/30/23 is $981.13. Your required beginning escrow balance according to this analysis should be $3,287.68. This means you have a surplus of $0.00.

 A surplus or shortage in your escrow account commonly occurs when:

> The projected amount at closing increases or decreases
> Your property taxes increase or decrease
> Your homeowners insurance increases or decreases
> You change your homeowners insurance company
> We pay delinquent taxes on your behalf

If you have questions about an increase in your property taxes or insurance premiums, please contact your local taxing authority or insurance agent.

### Your Surplus

If you have a surplus of more than $50.00:

> As long as your loan is current, we will issue you a check for the surplus amount. If your loan is current and your surplus check is not enclosed with your Annual Escrow Account Disclosure Statement, you can expect to receive it soon.

If you have a surplus of less than $50.00:

> We will keep the surplus and lower your monthly payments as noted on your statement.

Please review the Account Projections section of your Annual Escrow Account Disclosure Statement to confirm the disbursement amounts of the escrowed items. If you find errors in this information, please confirm the disbursement amounts with your local taxing authority or insurance carrier and contact us to report any discrepancies.

---

### FREQUENTLY ASKED QUESTIONS

**I thought I had a fixed rate. Why did my payment change?**

Your mortgage payment is made up of two parts: your loan payment (principal and interest) and your escrow payment (taxes and insurance). Your loan payment does not increase or decrease unless you have an adjustable rate mortgage (ARM). The portion of your monthly mortgage payment that goes toward escrows (taxes, homeowners and/or mortgage insurance) will change based on your projected amounts due to be paid.

**Your Mortgage Payment**



\* Your escrow payment may consist of the items in the three categories shown in gray.

Please note: this chart is provided for demonstration purposes only and is not intended to represent the specific amount you have in each category.

**Why is there extra money in my escrow account?**

Your escrow account makes sure you have money set aside to pay the necessary taxes and insurance.

A certain amount of the funds in your escrow account are designated to help keep your account from going negative. We call that an escrow cushion.

Think of your cushion as overdraft protection for your escrow account. Your cushion is designed to help offset any small changes in your tax and/or insurance bills. This helps lessen the burden of an escrow shortage when your escrow analysis is completed. Cushions typically cannot be waived or removed.

---

Customer Service: 1.800.509.0183   Collections: 1.800.509.0183
www.LakeviewLoanServicing.MyLoanCare.com
Monday - Friday: 8 a.m. to 9 p.m. ET  Saturday: 8 a.m. to 3 p.m. ET
P.O. BOX 8068 | Virginia Beach, VA 23450

Escrow   Page 4

EXHIBIT 1



3637 Sentara Way | Virginia Beach, VA 23452

## Check Your Information Online

Visit www.LakeviewLoanServicing.MyLoanCare.com to:

> View your current escrow account balance
> View your payment information
> View your estimated tax disbursement amounts
> View your insurance premiums
> Enroll for email notifications when escrow disbursements are made

## If You Need Assistance

 Our representatives are ready to assist you should you need further information or have additional questions or concerns. Call 1.800.509.0183 Monday - Friday: 8 a.m. to 9 p.m. ET, and Saturday: 8 a.m. to 3 p.m. ET.

Sincerely,

Escrow Department
LoanCare, LLC
NMLS ID 2916

*This summary is not a substitute for the Annual Escrow Account Disclosure Statement and it is important that you still review the enclosed Annual Escrow Account Disclosure Statement in its entirety.*

**TO THE EXTENT THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) AND/OR STATE DEBT COLLECTION LAWS ARE APPLICABLE, PLEASE BE ADVISED THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED IN BANKRUPTCY, IS SUBJECT TO THE AUTOMATIC STAY OR IS PROVIDED FOR IN A CONFIRMED PLAN, THIS COMMUNICATION IS FOR INFORMATIONAL PURPOSES ONLY, AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO IMPOSE PERSONAL LIABILITY FOR SUCH OBLIGATION.**

### How can I lower my escrow?

You may seek additional insurance quotes while maintaining the required coverage. You may contact your taxing authorities and ensure that you have taken advantage of all applicable exemptions.  If you are able to reduce the cost of your insurance and/or are approved for an exemption, please make sure to provide us updated information.

### Can I prepay my escrow so that my payments don't change?

No.  You are required to pay 1/12th of each escrowed item monthly with your principal and interest payment.

Customer Service: 1.800.509.0183   Collections: 1.800.509.0183
www.LakeviewLoanServicing.MyLoanCare.com
Monday - Friday: 8 a.m. to 9 p.m. ET Saturday: 8 a.m. to 3 p.m. ET
P.O. BOX 8068 | Virginia Beach, VA 23450

Escrow Page 5                                    EXHIBIT A

# A GUIDE TO YOUR ANNUAL ESCROW STATEMENT

## Understanding Your Statement

Your business is important to us and so is your satisfaction. We know that understanding your Annual Escrow Account Disclosure Statement can be overwhelming. We have created this guide to help you.

Please take the time to review this thoroughly.



**❶ Annual Escrow Account Disclosure Statement**

The Annual Escrow Account Disclosure Statement section includes your loan number, the review period and the escrow surplus/shortage.
- Loan Number – Unique primary identifier that is specific to your loan.
- Review Period – Time frame for activity displayed in the statement.
- Escrow Surplus/Shortage – If your projected escrow account balance is greater than the required beginning escrow balance, you have a surplus. If your projected escrow account balance is less that the required beginning escrow balance, you have a shortage.

**❷ Current Mortgage Payment**

This section shows your current total monthly payment with a breakdown of principal and/or interest and escrow.

**❸ New Mortgage Payment**

This section displays your new payment amount and the date on which it is due. This includes principal and interest, escrow and additional amounts.
- Effective Due Date – Date on which your new payment is due.

**❹ Account History**

This section displays a breakdown of your account history for the review period that includes the following sections:
- Month – The month for which activity is displayed.
- Activity – A description of the projected and/or actual amount(s).
- Projected Amount: Deposit – 1/12 of the anticipated annual escrow disbursement as of the last analysis you received. This is what we expected you to pay into your escrow account each month.
- Projected Amount: Disbursement – The amounts we expected to disburse on your behalf to various tax and insurance entities.
- Actual Amount: Deposit – The actual amount we received from you and deposited into your escrow account.
- Actual Amount: Disbursement – The amounts we actually disbursed on your behalf to various tax and insurance entities.
- Projected Escrow Balance – The escrow balance we expected your account to show at the end of each month, based on the projected payments and projected disbursements.
- Actual Escrow Balance – The balance in your escrow account at the end of each month, based on the actual payments and disbursements that occurred during the period.



EXHIBIT 1
Exhibit "A"

# A GUIDE TO YOUR ANNUAL ESCROW STATEMENT

**❺ Total Anticipated Annual Disbursement**

This section displays your tax and insurance disbursements. The total anticipated annual disbursement is the sum of all the tax and insurance payments.

**❻ Account Projections**

This section displays a breakdown of your account projections for the review period that includes:

- Month – The month for which activity is displayed.
- Projected Payments – 1/12 of the anticipated annual escrow disbursement as of the last analysis you received. This is what we expected you to pay into your escrow account each month.
- Disbursements – The amounts we expected to disburse on your behalf to various tax and insurance entities.
- Projected Escrow – The escrow balance we expected your account to show at the end of each month, based on the projected payments and projected disbursements.
- Required Escrow – The balance in your escrow account at the end of each month, based on the actual payments and disbursements that occurred during the period.

## Contact Us

If you have any questions, please call us or visit us online by referencing the information provided on your Annual Escrow Account Disclosure Statement.

Written notices of error or information requests should be sent to:

ATTN: The Office of the Customer
P.O. Box 8068
Virginia Beach, VA 23450

Business Hours
Monday – Friday, 8 A.M. to 9 P.M. ET
Saturday, 8 A.M. to 3 P.M. ET



Exhibit "A"

EXHIBIT 1

MIN #

Loan No.:

# Note

FHA Case No.

March 29, 2017           Riverside           California

*(Date)*                   *(City)*                *(State)*

4199 9TH STREET, RIVERSIDE, CA 92501
*(Property Address)*

1. **BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay U.S. $ 313,222.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is Provident Savings Bank, F.S.B.

   I will make all payments under this Note in the form of cash, check or money order.

   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST.** Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      4.500%.

   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. **PAYMENTS**

   **(A) Time and Place of Payments.** I will pay principal and interest by making a payment every month.

   I will make my monthly payment on the 1st day of each month beginning on May 1, 2017     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on April 1, 2047     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

   I will make my monthly payments at 3756 Central Ave., Riverside, CA 92506
                                                 or at a different place if required by the Note Holder.

   **(B) Amount of Monthly Payments.** My monthly payment will be in the amount of U.S. $1,587.05     .

4. **BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

   I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

FHA Multistate Fixed Rate Note
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1/21/2015
VMP1R (1502)
Page 1 of 3

5. **LOAN CHARGES.** If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A) **Late Charge for Overdue Payments.** If the Note Holder has not received the full amount of any monthly payment by the end of  fifteen  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  4.000% of my overdue payment of principal and interest.

   I will pay this late charge promptly but only once on each late payment.

   (B) **Default.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   (C) **Notice of Default.** If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   (D) **No Waiver By Note Holder.** Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   (E) **Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. **GIVING OF NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

   Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS.** I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

FHA Multistate Fixed Rate Note
Bankers SystemsTM VMP ®
Wolters Kluwer Financial Services

1/21/2015
VMP1R (1502)
Page 2 of 3

EXHIBIT 1

10. **UNIFORM SECURED NOTE.** This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MAXIMO ARRIOLA                -Borrower

_____ (Seal)
INGRID CARRILLO               -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

*(Sign Original Only)*

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

**Loan Origination Organization:** Provident Savings Bank, F.S.B.
**NMLS ID:** ██████
**Loan Originator:** KATHERINE YORK
**NMLS ID:** ██████

### Pay To The Order Of

_____

**Without Recourse**
**Lakeview Loan Servicing LLC**
**By** Donna Harkness
**Donna Harkness, Vice President**

FHA Multistate Fixed Rate Note
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1/21/2015
VMP1R (1502)
Page 3 of 3

EXHIBIT 1

# NOTE ALLONGE

Loan Number: ████████████        MIN #: ████████████

Borrower(s):  MAXIMO ARRIOLA
              INGRID CARRILLO


Property Address: 4199 9TH STREET
                  RIVERSIDE, CA 92501

Note/Loan Amount: $313,222.00

Note/Loan Date: 3/29/2017


*PAY TO THE ORDER OF:*

### Lakeview Loan Servicing LLC

WITHOUT RECOURSE


Company Name:  Provident Savings Bank, F.S.B.

Authorized Signature:


Printed Name and Title of Authorized Signer:

McKinley A. Drew, Vice President

EXHIBIT B

# PROMISSORY NOTE
*(MyHome Assistance Program)*
[With FHA First Loans Only]

Property Address: 4199 9TH STREET, RIVERSIDE, CALIFORNIA 92501

$ 11,165.00                                    MARCH 29              , 2 017
                                                      Date

FOR VALUE RECEIVED, the undersigned, MAXIMO ARRIOLA, INGRID CARRILLO

(the "Borrower") hereby promises to pay to the order of PROVIDENT SAVINGS BANK, F.S.B

its assignee or holder whose address is 3756 CENTRAL AVE, RIVERSIDE, CALIFORNIA 92506
(the "Lender") as further provided herein, a principal amount equal to ELEVEN THOUSAND ONE HUNDRED SIXTY-FIVE AND 00/100 Dollars, ($ 11,165.00                   ), with simple interest at the rate of TWO AND 50/100            Percent ( 2.500    %) per annum on the unpaid principal balance from the date of this Note, until paid. The obligation of the Borrower with respect to this Promissory Note (the "Note") is secured by that certain deed of trust entitled "Permanent Deed of Trust with Assignment of Rents, Security Agreement and Fixture Filing, (MyHome Assistance Program)[With FHA First Loans Only]" (the "Deed of Trust"), and executed by the Borrower contemporaneously herewith.

## DEFINITIONS

"Date of this Note" - means the date that this Note is executed as specified on the top right hand side of this page.

"First Note" and "First Deed of Trust" - means that purchase money note secured by a deed of trust recorded concurrently herewith and which is an encumbrance on the Property in a 1st priority lien position.

## RECITALS

1.    *The Borrower's Obligation.* This Note evidences the obligation of the Borrower to the Lender for the repayment of funds loaned to finance the purchase of that certain real property (the "Property") described in the Deed of Trust.

2.    *Owner Occupancy Representation.* At the time of the making of this Note, Borrower represents and warrants that he/she intends to occupy the property as his/her primary residence.

3.    *Repayment of Loan Principal and Interest.* This is a deferred payment obligation. The Borrower shall repay to the Lender the principal, interest and any other amounts due under this Note on the earliest of the following occurrences:

(1)    The First Note and First Deed of Trust on the Property is paid in full or reaches its maturity date, whichever occurs first;

(2)    The First Note and First Deed of Trust on the Property is refinanced; or

---

MyHome [with FHA First] Promissory Note
HFAG-430-5575
PN2.CAH 10/03/15                          Page 1 of 3

DocMagic *eForms*
www.docmagic.com

Pn2.cah.xml

Certified to be a true and
exact Copy of the Original

EXHIBIT 1

(3)  The First Note and First Deed of Trust on the Property becomes due and payable for any reason.

4.  *Acceleration of Payment.* The principal amount of this Note, together with any then outstanding accrued interest thereon, shall at the election of Lender become immediately due and payable upon the occurrence of any of the following events:

(1)  In the event of a default under the terms of this Note or the Deed of Trust securing this Note; or

(2)  In the event of a default under the terms of any superior note or deed of trust on the Property.

5.  *Place and Manner of Payment.* All amounts due and payable under this Note are payable at such place or places as the Lender may designate to the Borrower in writing from time to time.

6.  *Application of Payments.* All payments received on account of this Note shall be first applied to accrued interest, and the remainder shall be applied to the reduction of principal.

7.  *Attorney's Fees.* The Borrower hereby agrees to pay all costs and expenses, including reasonable attorney's fees, which may be incurred by the Lender in the enforcement of this Note.

8.  *Default and Acceleration.* All covenants, conditions and agreements contained in the Deed of Trust are hereby made a part of this Note, and the Borrower agrees that the unpaid balance of the then principal amount of the Note, together with all accrued interest thereon and charges owing, at the option of the Lender, or if so provided in this Note or the Deed of Trust, shall automatically become immediately due and payable, and thereafter until paid bear interest at the rate of ten percent (10%) per annum, upon the failure of the Borrower to make any payment hereunder as and when due; upon the failure of the Borrower to perform or observe any other term or provision of this Note, or upon the occurrence of any event (whether termed default, event of default or similar term) which, under the terms of the Deed of Trust, shall entitle the Lender to exercise rights or remedies thereunder.

9.  *Notices.* Except as may be otherwise specifically provided herein, any approval, notice, direction, consent, request or other action by the Lender shall be in writing and may be communicated to the Borrower at the address of the Property, or at such other place or places as the Borrower shall designate to the Lender in writing, from time to time, for the receipt of communications from Lender.

10.  *No Prohibition Against Prepayment.* The Borrower may prepay this Note at any time without penalty.

11.  *Governing Law.* This Note shall be construed in accordance with and be governed by the laws of the State of California.

12.  *Severability.* If any provision of this Note shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby.

13.  *Time.* Time is of the essence in this Note.

14.  *No Waiver by the Lender.* No waiver of any breach, default or failure of condition under the terms of this Note or the Deed of Trust shall be implied from any failure of the Lender to take, or any delay by the Lender in taking action with respect to such breach, default or failure or from any previous waiver of any similar or unrelated breach, default or failure; and a waiver of any term of this Note, the Deed of Trust, or any of the obligations secured thereby must be made in writing and shall be limited to the express written terms of such waiver.

Pn2.cah.xml

Certified to be a true and
exact Copy of the Original

**EXHIBIT 1**

15. *Successors and Assigns.* The promises and agreements herein contained shall bind and inure to the benefit of, as applicable, the respective heirs, executors, administrators, successors and assigns of the parties.

 

MAXIMO ARRIOLA                    Borrower       INGRID CARRILLO                    Borrower

 

Borrower               Borrower

 

Borrower               Borrower

Loan Originator: KATHERINE YORK, NMLSR ID ▇▇▇▇
Loan Originator Organization: PROVIDENT SAVINGS BANK F.S.B.,
NMLSR ID ▇▇▇▇

MyHome (with FHA First) Promissory Note
HFAG-430-5575
PN2.CAH 10/03/15

Page 3 of 3

*DocMagic eForms*
www.docmagic.com

Pn2.cah.xml

Certified to be a true and
exact Copy of the Original

**EXHIBIT 1**

**DOC # 2017-0131684**

04/03/2017 08:00 AM Fees: $81.00
Page 1 of 8
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:

California Housing Finance Agency
Single Family Lending Division
Subordinate Loan Processing Unit
P.O. Box 4034
Sacramento, CA 95812-4034

\*\*This document was electronically submitted
to the County of Riverside for recording\*\*
Receipted by: MARY #420

Loan Number: ▮▮▮▮▮▮

## PERMANENT DEED OF TRUST WITH ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING
### *(MyHome Assistance Program)*
### [With FHA First Loans Only]

### Deed of Trust Shall Be Recorded In Second Lien Position

MIN: ▮▮▮▮▮▮▮▮

DEFINITIONS

(A) "Lender" is PROVIDENT SAVINGS BANK, F.S.B
Lender is a FEDERAL CORPORATION _____ organized and existing under the laws of
CALIFORNIA _____ . Lender's address is 3756 CENTRAL AVE, RIVERSIDE,
CALIFORNIA 92506 _____.
The word "Lender" includes the present Lender, or any future owner or holder, including pledgee, of the indebtedness
secured hereby.

(B) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely
as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Deed of Trust.
MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box
2026, Flint, MI 48501-2026, Tel. (888) 679-MERS.

This Deed of Trust is made on MARCH 29, 2017 , by MAXIMO ARRIOLA, A
SINGLE MAN AND INGRID CARRILLO, A SINGLE WOMAN

_____ , (the "Borrower")
whose address is 11416 HOLMES AVENUE APT.14, MIRA LOMA, CALIFORNIA 91752
to the PROVIDENT FINANCIAL CORP.
(the "Trustee"), whose business address is 3756 CENTRAL AVENUE, RIVERSIDE, CALIFORNIA 92506,
in favor of MERS (solely as nominee for Lender and Lender's successors and assigns), and any successor or assigns
of MERS.

Pdotar2m.cah.xml

EXHIBIT 1 B

1.  BORROWER, IN CONSIDERATION OF THE INDEBTEDNESS HEREIN RECITED AND THE TRUST HEREIN CREATED HEREBY IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to Trustee in trust, with power of sale and right of entry and possession, all of Borrower's right, title and interest now held or hereafter acquired in and to the following: (a) all of that certain real property (the "Property") located in the County of <u>RIVERSIDE</u>    , State of California, described below as, <u>SEE LEGAL DESCRIPTION</u> ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A". A.P.N.: ████████

which property address is <u>4199 9TH STREET, RIVERSIDE, CALIFORNIA 92501</u> which is incorporated herein by this reference; and (b) all buildings, improvements and fixtures now or hereafter erected thereon, and all appurtenances, easements, and articles of property now or hereafter affixed to, placed upon or used in connection with the Property, together with all additions to, substitutions for, changes in or replacements of the whole or any part of said articles of property (all of which real and personal property are sometimes referred to as the "Property"); all of which are hereby pledged and assigned, transferred, and set over onto Trustee, and for purposes of this Deed of Trust declared to be part of the realty; provided, however, that furniture and other personal property of Borrower now or hereafter situated on said real property are not intended to be included as part of the Property. Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the property, and to take any action required of lender, including, but not limited to, releasing and canceling this Deed of Trust.

2.  BORROWER HEREBY ABSOLUTELY, UNCONDITIONALLY AND IRREVOCABLY ASSIGNS to Lender all rents, royalties, issues, accounts and profits of or relating to the Property. This assignment is absolute, primary and direct and is not intended to be a separate or secondary pledge, or other form of additional security, and no further act or step is or shall be required of Lender to perfect this assignment. This assignment shall not impose upon Lender any duty to cause the Property to produce rents nor shall Lender be deemed to be a mortgagee in possession by reason thereof for any purpose.

3.  THE ABOVE GRANT, TRANSFER, AND ASSIGNMENTS ARE FOR THE PURPOSE OF SECURING:

Payment of the indebtedness evidenced by that certain promissory note of Borrower of even date herewith and titled "Promissory Note (MyHome Assistance Program) [With FHA First Loans Only]" (the "Note") of Borrower in the face amount <u>ELEVEN THOUSAND ONE HUNDRED SIXTY-FIVE AND 00/100</u> Dollars, ($ <u>11,165.00</u> ), together with interest on such indebtedness according to the terms of the Note, and any and all amendments, modifications, extensions or renewals of the Note.

4.  TO PROTECT THE SECURITY OF THIS DEED OF TRUST, BORROWER AGREES:
    4.1  *Maintenance of the Property.* (a) To keep the Property in a decent, safe, sanitary, tenantable condition and repair and permit no waste thereof; (b) not to commit or suffer to be done or exist on or about the Property any condition causing the Property to become less valuable; (c) not to remove, demolish or structurally alter any buildings and improvements now or hereinafter located on the Property; (d) to repair, restore or rebuild promptly any buildings or improvements on the Property that may become damaged or be destroyed while subject to the lien of this Deed of Trust; (e) to comply with all applicable laws, ordinances and governmental regulations affecting the Property or requiring any alteration or improvement thereof, and not to suffer or permit any violations of any such law, ordinance or governmental regulation, nor of any covenant, condition or restriction affecting the Property; (f) not to initiate or acquiesce in any change in any zoning or other land use or legal classification which affects any of the Property

MyHome [FHA only] Deed of Trust MERS
HFAG-430-5630
PDOTAR2M.CAH 04/15/16    Page 2 of 7    *DocMagic eForms*
*www.docmagic.com*

Pdotar2m.cah.xml

without Lender's written consent; and (g) not to alter the use of all or any part of the Property without the prior written consent of Lender.

4.2 *Insurance*. To keep the Property insured, with loss payable to Lender, against loss or damage by fire and such other hazards, casualties and contingencies and by such companies, on such forms and in the amount of the replacement cost of the buildings or improvements on the Property, and to deliver the original of all such policies to Lender, together with receipts satisfactory to Lender evidencing payment of the premiums. All such policies shall provide that Lender shall be given thirty (30) days advance written notice of the cancellation, expiration or termination of any such policy or any material change in the coverage afforded by it. Renewal policies and any replacement policies, together with premium receipts satisfactory to Lender, shall be delivered to Lender at least thirty (30) days prior to the expiration of existing policies. Neither Trustee nor Lender shall by reason of accepting, rejecting, approving or obtaining insurance incur any liability for the existence, nonexistence, form or legal sufficiency of such insurance, or solvency of any insurer for payment of losses.

4.3 *Payment of Taxes and Utility Charges*. To pay, at least ten (10) days prior to delinquency, all taxes and assessments, both general and special, fines, penalties, levies and charges of every type or nature levied upon or assessed against any part of the Property.

4.4 *Payment and Discharge of Liens*. Borrower shall pay, when due, all claims of every kind and nature which might or could become a lien on the Property or any part thereof and will not at any time create or allow to exist any lien on the Property or any part thereof of any kind or nature other than this Deed of Trust; provided, however, that the following are excepted from this prohibition: (a) liens for taxes and assessments which are not delinquent although by law are given the status of a lien, and (b) such of the above claims as are, and only during the time they are, being contested by Borrower in good faith and by appropriate legal proceedings, and (c) such deeds of trust as are approved by Lender in writing. Borrower shall post security for the payment of these contested claims as may be requested by Lender. Borrower shall not default in the payment or performance of any obligation secured by a lien, mortgage or deed of trust which is superior to this Deed of Trust.

5. IT IS MUTUALLY AGREED THAT:

5.1 *Awards and Damages*. All judgments, awards of damages, settlements and compensation made in connection with or in lieu of (a) taking of all or any part of or any interest in the Property by or under assertion of the power of eminent domain, (b) any damage to or destruction of the Property or any part thereof by insured casualty, and (c) any other injury or damage to all or any part of the Property, are hereby assigned to and shall be paid to Lender. Lender is authorized and empowered (but not required) to collect and receive any such sums and is authorized to apply them in whole or in part upon any indebtedness or obligation secured hereby, in such order and manner as Lender shall determine at its option. Lender shall be entitled to settle and adjust all claims under insurance policies provided under this Deed of Trust and may deduct and retain from the proceeds of such insurance the amount of all expenses incurred by it in connection with any such settlement or adjustment. All or any part of the amounts so collected and recovered by Lender may be released to Borrower upon such conditions as Lender may impose for its disposition. Application of all or any part of the amounts collected and received by Lender or the release thereof shall not cure or waive any default under this Deed of Trust. If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date such notice is mailed, Lender is authorized to collect and apply the proceeds, at Lender's option, either to restoration or repair of the Property or to the sum secured by this Deed of Trust.

5.2 *Sale or Forbearance*. No sale of the Property, forbearances on the part of Lender or extension of the time for payment of the indebtedness hereby secured shall operate to release, discharge, waive, modify, change or affect the liability of Borrower either in whole or in part.

5.3 *Lender's Rights to Release*. Without affecting the liability of any person for payment of any indebtedness hereby secured (other than any person released pursuant hereto), including without limitation any one or more endorsers or guarantors, and without affecting the lien hereof upon any of the Property not released pursuant hereto, at any time and from time to time without notice: (a) Lender may, at its sole discretion, (i) release any person now or hereafter liable for payment of any or all such indebtedness, (ii) extend the time for or agree to alter the terms of payment of any or all of such indebtedness, and (iii) release or accept additional security for such indebtedness, or subordinate the lien or charge hereof; and (b) Trustee, acting pursuant to the written request of Lender, may reconvey all or any part of the Property, consent to the making of any map or plat thereof, join in granting any easement thereon, or join in any such agreement of extension or subordination.

5.4 *Reconveyance*. Upon written request of Lender stating that all sums and obligations secured hereby have been discharged, or otherwise as requested in writing by Lender, and upon surrender of this Deed of Trust and the Note and any additional loan notes to Trustee for cancellation, and upon payment to Trustee of its fees and

MyHome [FHA only] Deed of Trust MERS
HFAG-430-5630
PDOTAR2M.CAH 04/15/16

Page 3 of 7

DocMagic *eForms*
www.docmagic.com

Pdotar2m.cah.xml

expenses, Trustee shall reconvey, without warranty, the Property or that part thereof then held hereunder. The recitals in any reconveyance shall be conclusive proof of their truthfulness and the grantee in any such reconveyance may be described "as the person or persons legally entitled thereto." When the Property has been fully reconveyed, the last such reconveyance shall operate as a reassignment of all of the rents, royalties, issues, accounts and profits of the Property to the person or persons legally entitled thereto unless such reconveyance expressly provides to the contrary.

    5.5  *Payment of Principal and Interest.* Borrower shall promptly pay when due the principal of and interest (if applicable) on the indebtedness evidenced by the Note and late charges as provided by the Note.

    5.6  *Application of Payments.* Unless applicable law provides otherwise, all payments received by Lender under the Note will be applied by Lender first to interest payable on the Note, and then to the outstanding principal of the Note.

6.  REPAYMENT OF LOAN. The indebtedness secured by this Deed of Trust is a deferred payment obligation. The Borrower shall repay to the Lender the principal, interest and any other amounts due under the Note on the earliest of the following occurrences:

    (1)  The purchase money note and deed of trust recorded concurrently herewith and which is an encumbrance on the Property in a 1st priority lien position ("First Note and First Deed of Trust") on the Property is paid in full or reaches its maturity date, whichever occur first;

    (2)  The First Note and First Deed of Trust on the Property is refinanced;

    (3)  The First Note and First Deed of Trust on the Property becomes due and payable for any reason

7.  EVENTS OF DEFAULT

    7.1  *Events of Default.* Any one or more of the following events shall constitute a default under this Deed of Trust: (a) failure of Borrower to pay the indebtedness secured hereby or any installment thereof, whether principal, interest or otherwise, when and as the same become due and payable, whether at maturity or by acceleration or otherwise; or (b) failure of Borrower to observe or to perform any covenant, condition or agreement to be observed or performed by Borrower pursuant to the Note or this Deed of Trust; or (c) the occurrence of any event which, under the terms of the Note, shall entitle Lender to exercise the rights or remedies thereunder; or (d) the occurrence of any event of default under the terms of any superior note or deed of trust on the Property.

    7.2  *Acceleration and Sale.*

    (a)  Acceleration. In the event of any default Lender, without demand on Borrower, may declare all sums hereby secured immediately due and payable by notice thereof to Borrower or by executing and recording or by causing Trustee to execute and record a notice of default and election to cause the Property to be sold to satisfy the obligations secured hereby or by the commencement of an appropriate action to foreclose this Deed of Trust or by any other appropriate manner;

    (b)  Sale. After delivery to Trustee of a notice of default and demand for sale and after the expiration of such time and the giving of such notice of default and sale as may then be required by law, and without demand on Borrower, Trustee shall sell the Property at the time and place of sale fixed by it in said notice of sale, at public auction to the highest bidder for cash in lawful money of the United States of America, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale and from time to time thereafter may postpone such sale by public announcement at the time and place fixed by the preceding postponement. Any person, including Borrower, Trustee or Lender, may purchase at such sale. Upon such sale by Trustee it shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty expressed or implied.

    The recitals in such deed of any matters or facts shall be conclusive proof of their truthfulness. Upon sale by Trustee, and after deducting all costs, expenses and fees of Trustee and of this Deed of Trust, Trustee shall apply the proceeds of sale to the payment of the principal indebtedness hereby secured, whether evidenced by the Note or otherwise, or representing advances made or costs or expenses paid or incurred by Lender under this Deed of Trust, or any other instrument evidencing or securing any indebtedness hereby secured and to the payment of all other sums then secured hereby, including interest as provided in this Deed of Trust, or any other instrument evidencing or securing any indebtedness hereby secured, in such order as Lender shall direct; and then the remainder, if any, shall be paid to the person or persons legally entitled thereto.

    7.3  *Attorney's Fees.* If Trustee or Lender shall be made parties to or shall intervene in any action or proceeding affecting the Property or the title thereto or the interest of Trustee or Lender under this Deed of Trust, or if Lender employs an attorney to collect any or all of the indebtedness hereby secured or to foreclose this Deed of Trust, or authorizes Trustee to conduct trustee's sale proceedings hereunder, then Trustee and Lender shall be reimbursed by Borrower, immediately and without demand, for all reasonable costs, charges and attorney's fees

MyHome [FHA only] Deed of Trust MERS
HFAG-430-5630
PDOTAR2M.CAH  04/15/16        Page 4 of 7

DocMagic *eForms*
www.docmagic.com

Pdotar2m.cah.xml

incurred by them or either of them in any such case whether or not suit be commenced, and the same, together with interest thereon from the date of payment at the rate of ten percent (10%) per annum.

7.4   *Exercise of Remedies; Delay.* No exercise of any right or remedy by Lender or Trustee hereunder shall constitute a waiver of any other right or remedy herein contained or provided by law, and no delay by Lender or Trustee in exercising any such right or remedy hereunder shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any default hereunder.

7.5   *Trustee Substitution.* The irrevocable power to appoint a substitute trustee or trustees hereunder is hereby expressly granted to Lender, to be exercised at any time hereafter, without specifying any reason therefor by filing for record in the office where this Deed of Trust is recorded a deed of appointment, and said power of appointment of successor trustee or trustees may be exercised as often as and whenever Lender deems advisable. The exercise of said power of appointment, no matter how often, shall not be deemed an exhaustion thereof, and upon recording of such deed or deeds of appointment, trustee or trustees so appointed shall thereupon, without further act or deed of conveyance, succeed to and become fully vested with identically the same title and estate in and to the Property hereby conveyed and with all the rights, powers, trusts and duties of the predecessor in the trust hereunder, with the like effect as if originally named as trustee or as one of the trustees.

7.6   *Remedies Cumulative.* No remedy herein contained or conferred upon Lender or Trustee is intended to be exclusive of any other remedy or remedies afforded by law or by the terms hereof to Lender or Trustee but each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity.

8.   MISCELLANEOUS PROVISIONS

8.1   *Successors, Assigns, Gender, Number.* The covenants and agreements herein contained shall bind, and the benefit and advantages shall inure to, the respective heirs, executors, administrators, successors and assigns of the parties. Wherever used, the singular number shall include the plural, and the plural the singular, and the use of any gender shall be applicable to all genders.

8.2   *Headings.* The headings are inserted only for convenience of reference and in no way define, limit, or describe the scope or intent of this Deed of Trust, or of any particular provision thereof, or the proper construction thereof.

8.3   *Actions on Behalf of Lender.* Except as be otherwise specifically provided herein, whenever any approval, notice, direction, consent, request or other action by Lender is required or permitted under this Deed of Trust, such action shall be in writing.

8.4   *Terms.* The word "Lender" means the present Lender, or any future owner or holder, including pledgee, of the indebtedness secured hereby.

8.5   *Obligations of Borrower.* If more than one person has executed this Deed of Trust as "Borrower", the obligations of all such persons hereunder shall be joint and several.

8.6   *Severability.* If any provision of this Deed of Trust shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions hereof shall not in any way be affected or impaired.

8.7   *Indemnification.* Borrower shall indemnify and hold Lender, its officers and agents harmless against any and all losses, claims, demands, penalties and liabilities which Lender, its officers or agents may sustain or suffer by reason of anything done or omitted in good faith pursuant to or in connection with this Deed of Trust and not assert any claim against Lender, its officers or agents by reason of any action so taken or omitted. Borrower shall, at Borrower's expense, defend, indemnify, save and hold Lender, its officers and agents harmless from any and all claims, demands, losses, expenses, damages (general, punitive or otherwise), causes of action (whether legal or equitable in nature) asserted by any person, firm, corporation or other entity arising out of this Deed of Trust and Borrower shall pay Lender upon demand all claims, judgments, damages, losses or expenses (including reasonable legal expense) incurred by Lender as a result of any legal action arising out of this Deed of Trust.

8.8   *HUD Insurance.* Notwithstanding any provision in this Deed of Trust to the contrary, the provisions of the HUD purchase money deed of trust recorded concurrently herewith shall control to the extent that its provisions conflict with the provisions of this Deed of Trust. Moreover, any legal restrictions on conveyance of the property contained herein, or in any other loan document associated with the loan secured by this Deed of Trust, will automatically terminate if title to the property is transferred by foreclosure or deed in lieu of foreclosure or if this Deed of Trust is assigned to the Secretary of HUD

8.9   *Recording order and Subordination.* This Deed of Trust shall be recorded in second lien position. This Deed of Trust is subordinate to the First Deed of Trust recorded concurrently herewith. Except for the aforementioned subordination, this Deed of Trust is intended to be and remain at all times prior and superior to any other deeds of trust on the Property.

MyHome [FHA only] Deed of Trust MERS
HFAG-430-5630
PDOTAR2M.CAH  04/15/16                          Page 5 of 7                   DocMagic *eForms*
                                                                             www.docmagic.com

Pdotar2m.cah.xml

8.10 *Notice.* The Borrower has requested that a copy of any notice of default and of any notice of sale hereunder be mailed to it at the address set forth above.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust on the day and year set forth above.

_____
                        Borrower
MAXIMO ARRIOLA

_____
                        Borrower
INGRID CARRILLO

_____
                        Borrower

_____
                        Borrower

_____
                        Borrower

_____
                        Borrower

MyHome [FHA only] Deed of Trust MERS
HFAG-430-5630
PDOTAR2M.CAH  04/15/16                          Page 6 of 7

DocMagic *eForms*
www.docmagic.com

Pdotar2m.cah.xml

EXHIBIT "1"

## ACKNOWLEDGEMENTS

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                 )
                                   ) ss.

County of RIVERSIDE           )

On March 30, 2017 before me, Brandy Hernandez

a Notary Public, personally appeared MAXIMO ARRIOLA AND INGRID CARRILLO

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____     (Seal)

```
BRANDY HERNANDEZ
Commission # 2100047
Notary Public - California
Riverside County
My Comm. Expires Feb 13, 2019
```

Loan Originator: KATHERINE YORK, NMLSR ID ▆▆▆▆▆
Loan Originator Organization: PROVIDENT SAVINGS BANK F.S.B., NMLSR ID ▆▆▆▆▆

MyHome [FHA only] Deed of Trust MERS
HFAG-430-5630
PDOTAR2M.CAH 04/15/16                  Page 7 of 7

DocMagic eForms
www.docmagic.com

Pdotar2m.cah.xml

# SCHEDULE A

The land hereinafter referred to is situated in the City of Riverside, County of Riverside, State of CA, and is described as follows:

That portion of Block 8, Range 11, in the City of Riverside, County of Riverside, State of California, as shown by map on file in Book 7, Page 17 of Maps, records of San Bernardino County, California, described as follows:

Commencing at the Southwesterly corner of said Block; thence Easterly along the Northerly line of Ninth Street, 80 feet; thence at right angles Northerly and parallel with the Easterly line of Locust Street, 55 feet; thence at right angles Westerly and parallel with the Northerly line of Ninth Street, 80 feet to the Easterly line of Locust Street; thence Southerly on the Easterly line of Locust Street, 55 feet to the point of beginning.

APN: ███████████

Loan Number ████████████

### PROMISSORY NOTE
*(Zero Interest Program)*
**[With FHA First Loans Only]**

Property Address: 4199 9TH STREET, RIVERSIDE, CALIFORNIA 92501

$ 12,528.00

_____ MARCH 29 , 2017
Date of Note

FOR VALUE RECEIVED, the undersigned, MAXIMO ARRIOLA, INGRID CARRILLO

(the "Borrower"), hereby promises to pay to the order of PROVIDENT SAVINGS BANK, F.S.B
_____ , its assignee or holder whose address is
3756 CENTRAL AVE, RIVERSIDE, CALIFORNIA 92506 (the "Lender"),
as further provided herein, a principal amount equal to TWELVE THOUSAND FIVE HUNDRED
TWENTY-EIGHT AND 00/100 Dollars ($ 12,528.00 ),
with no interest accruing thereon. The obligation of the Borrower with respect to this Promissory Note (the "Note")
is secured by that certain deed of trust entitled "Permanent Deed of Trust with Assignment of Rents, Security
Agreement and Fixture Filing, Filing (Zero Interest Program") [With FHA First Loans Only]" (the "Deed of Trust"),
and executed by the Borrower contemporaneously herewith.

### DEFINITIONS

"Date of this Note" - means the date that this Note is executed as specified on the top right hand side of this page.

"First Note" and "First Deed of Trust" - means that purchase money note secured by a deed of trust recorded
concurrently herewith and which is an encumbrance on the Property in a 1st priority lien position.

### RECITALS

1. *The Borrower's Obligation.* This Note evidences the obligation of the Borrower to the Lender for the
repayment of funds loaned to finance the purchase of that certain real property (the "Property") described in the Deed
of Trust. The amount of principal plus deferred accrued interest shall be due and payable as set forth in paragraph 3
below, or upon Acceleration of Payment as set forth in paragraph 4 below.

2. *Owner Occupancy Representation.* At the time of the making of this Note, Borrower represents and
warrants that he/she intends to occupy the property as his/her primary residence.

3. *Repayment of Loan Principal and Interest.* This is a deferred payment obligation. The Borrower shall
repay to the Lender the principal, interest (if applicable) and any other amounts due under this Note on the earliest
of the following occurrences:

   (1) The First Note and First Deed of Trust on the Property is paid in full or reaches its maturity date,
whichever occurs first;
   (2) The First Note and First Deed of Trust on the Property is refinanced;
   (3) The First Note and First Deed of Trust on the Property becomes due and payable for any reason.

ZIP FHA PROMISSORY NOTE
CAPN.HFA 10/03/15    Page 1 of 3    DocMagic *eForms*
www.docmagic.com

Certified to be a true and
exact Copy of the Original

**EXHIBIT "1"**

4.  *Acceleration of Payment*. The principal amount of this Note, together with any then outstanding accrued interest thereon, shall at the election of Lender become immediately due and payable upon the occurrence of any of the following events:

(1)  In the event of a default under the terms of this Note or the Deed of Trust securing this Note;
(2)  In the event of a default under the terms of the First Note and Deed of Trust on the Property.

5.  *Place and Manner of Payment*. All amounts due and payable under this Note are payable at the principal office of the Lender set forth above, or at such other place or places as the Lender may designate to the Borrower in writing from time to time.

6.  *Application of Payments*. All payments received on account of this Note shall be first applied to accrued interest and the remainder shall be applied to the reduction of principal.

7.  *Attorney's Fees*. The Borrower hereby agrees to pay all costs and expenses, including reasonable attorney's fees, which may be incurred by the Lender in the enforcement of this Note.

8.  *Default and Acceleration*. All covenants, conditions and agreements contained in the Deed of Trust are hereby made a part of this Note, and the Borrower agrees that the unpaid balance of the then principal amount of this Note, together with all accrued interest thereon and charges owing, shall, at the option of the Lender or, if so provided in this Note or the Deed of Trust, shall automatically, become immediately due and payable, and thereafter until paid bear interest at the rate of ten percent (10%) per annum, upon the failure of the Borrower to make any payment hereunder as and when due; upon the failure of the Borrower to perform or observe any other term or provision of this Note, or upon the occurrence of any event (whether termed default, event of default or similar term) which under the terms of the Deed of Trust, shall entitle the Lender to exercise rights or remedies thereunder.

9.  *Notices*. Except as may be otherwise specifically provided herein, any approval, notice, direction, consent, request or other action by the Lender shall be in writing and may be communicated to the Borrower at the address of the Property, or at such other place or places as the Borrower shall designate to the Lender in writing, from time to time, for the receipt of communications from the Lender.

10.  *No Prohibition Against Prepayment*. The Borrower may prepay this Note at any time without penalty.

11.  *Governing Law*. This Note shall be construed in accordance with and be governed by the laws of the State of California.

12.  *Severability*. If any provision of this Note shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby.

13.  *Time*. Time is of the essence of this Note.

14.  *No Waiver by the Lender*. No waiver of any breach, default or failure of condition under the terms of this Note or the Deed of Trust shall be implied from any failure of the Lender to take, or any delay by the Lender in taking action with respect to such breach, default or failure or from any previous waiver of any similar or unrelated breach, default or failure; and a waiver of any term of this Note, the Deed of Trust, or any of the obligations secured thereby must be made in writing and shall be limited to the express written terms of such waiver.

ZIP FHA PROMISSORY NOTE
CAPN.HFA  10/03/15

Page 2 of 3

DocMagic eForms
www.docmagic.com

Capn.hfa.xml

Certified to be a true and
exact Copy of the Original

15. *Successors and Assigns*. The promises and agreements herein contained shall bind and inure to the benefit of, as applicable, the respective heirs, executors, administrators, successors and assigns of the parties.

_____ Borrower
MAXIMO ARRIOLA

_____ Borrower
INGRID CARRILLO

_____ Borrower

_____ Borrower

_____ Borrower

_____ Borrower

Loan Originator: KATHERINE YORK, NMLSR ID ███████
Loan Originator Organization: PROVIDENT SAVINGS BANK F.S.B.,
NMLSR ID ███████

ZIP FHA PROMISSORY NOTE
CAPN.HFA 10/03/15

Page 3 of 3

DocMagic *eForms*
www.docmagic.com

Capn.hfa.xml

Certified to be a true and
exact Copy of the Original

**EXHIBIT "B"**

**DOC # 2017-0131685**
04/03/2017 08:00 AM Fees: $51.00
Page 1 of 8
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

RECORDING REQUESTED BY AND WHEN
RECORDED RETURN TO:

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: MARY #420

California Housing Finance Agency
Single Family Lending Division
Subordinate Loan Processing Unit
P.O. Box 4034, MS 980
Sacramento, CA 95812-4034

Loan Number: ██████████

(For Recorder's Use Only)

## PERMANENT DEED OF TRUST WITH ASSIGNMENT OF RENTS,
### (CalHFA Zero Interest Program)
### [With FHA First Loans Only]

MIN: ████████████████

## DEFINITIONS

(A)  "Lender" is __PROVIDENT SAVINGS BANK, F.S.B__ .
Lender is a __FEDERAL CORPORATION__ organized and existing under the laws of
__CALIFORNIA__ . Lender's address is __3756 CENTRAL AVE, RIVERSIDE,__
__CALIFORNIA 92506__ .
The word "Lender" includes the present Lender, or any future owner or holder, including pledgee, of the indebtedness
secured hereby.

(B)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely
as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Deed of Trust.
MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box
2026, Flint, MI 48501-2026, Tel. (888) 679-MERS.

This Deed of Trust is made on __MARCH 29__ , 2 _017_ , by __MAXIMO ARRIOLA, A__
__SINGLE MAN AND INGRID CARRILLO, A SINGLE WOMAN__

_____(the "Borrower"),
whose address is __11416 HOLMES AVENUE APT.14, MIRA LOMA, CALIFORNIA 91752__ ,
to __PROVIDENT FINANCIAL CORP.__ ,
(the "Trustee"), whose business address is __3756 CENTRAL AVENUE, RIVERSIDE, CALIFORNIA 92506__
in favor of MERS (solely as nominee for Lender and Lender's successors and assigns), and any successor or assigns
of MERS.

Cazipfham.hfa.xml

1. BORROWER, IN CONSIDERATION OF THE INDEBTEDNESS RECITED HEREIN AND THE TRUST HEREIN CREATED HEREBY IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to Trustee in trust, with power of sale and right of entry and possession, all of Borrower's right, title and interest now held or hereafter acquired in and to the following: (a) all of that certain real property (the "Property") located in the County of RIVERSIDE , State of California, described below as:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: ▉▉▉▉▉▉▉▉▉▉

which property address is 4199 9TH STREET, RIVERSIDE, CALIFORNIA 92501

and (b) all buildings, improvements and fixtures now or hereafter erected thereon, and all appurtenances, easements, and articles of property now or hereafter affixed to, placed upon or used in connection with the Property, together with all additions to, substitutions for, changes in or replacements of the whole or any part of said articles of property (all of which real and personal property are sometimes referred to as the "Property"); all of which are hereby pledged and assigned, transferred, and set over onto Trustee, and for purposes of this Deed of Trust declared to be part of the realty; provided, however, that furniture and other personal property of Borrower now or hereafter situated on said real property are not intended to be included as part of the Property. Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the property, and to take any action required of lender, including, but not limited to, releasing and canceling this Deed of Trust.

2. BORROWER HEREBY ABSOLUTELY, UNCONDITIONALLY AND IRREVOCABLY ASSIGNS to Lender all rents, royalties, issues, accounts and profits of or relating to the Property. This assignment is absolute, primary and direct and is not intended to be a separate or secondary pledge, or other form of additional security, and no further act or step is or shall be required of Lender to perfect this assignment. This assignment shall not impose upon Lender any duty to cause the Property to produce rents nor shall Lender be deemed to be a mortgagee in possession by reason thereof for any purpose. The rights of the Lender to all rents, royalties, issues, accounts and profits of, or relating to the Property, are subordinate to the rights of the holder of the first senior lienholder.

3. THE ABOVE GRANT, TRANSFER, AND ASSIGNMENTS ARE FOR THE PURPOSE OF SECURING:

Payment of the indebtedness evidenced by that certain promissory note of Borrower of even date herewith and titled "Promissory Note (Zero Interest Program) [With FHA First Loans Only]" (the "Note") of Borrower in the face amount of TWELVE THOUSAND FIVE HUNDRED TWENTY-EIGHT AND 00/100
_____ Dollars ($ 12,528.00 ),
together with interest (if applicable) on such indebtedness according to the terms of the Note, and any and all amendments, modifications, extensions or renewals of the Note.

4. TO PROTECT THE SECURITY OF THIS DEED OF TRUST, BORROWER AGREES:

4.1 *Maintenance of the Property.* (a) To keep the Property in a decent, safe, sanitary, tenantable condition and repair and permit no waste thereof; (b) not to commit or suffer to be done or exist on or about the Property any condition causing the Property to become less valuable; (c) not to remove, demolish or structurally alter any buildings and improvements now or hereinafter located on the Property; (d) to repair, restore or rebuild promptly any buildings

ZIP FHA Deed of Trust MERS
HFAG-430-5628
CAZIPFHAM.HFA 04/15/16

Page 2 of 7

*DocMagic eForms*
*www.docmagic.com*

Cazipfham.hfa.xml

or improvements on the Property that may become damaged or be destroyed while subject to the lien of this Deed of Trust; (e) to comply with all applicable laws, ordinances and governmental regulations affecting the Property or requiring any alteration or improvement thereof, and not to suffer or permit any violations of any such law, ordinance or governmental regulation, nor of any covenant, condition or restriction affecting the Property; (f) not to initiate or acquiesce in any change in any zoning or other land use or legal classification which affects any of the Property without Lender's written consent; and (g) not to alter the use of all or any part of the Property without the prior written consent of the Lender.

4.2  *Insurance.* To keep the Property insured, with loss payable to Lender, against loss or damage by fire and such other hazards, casualties and contingencies and by such companies, on such forms and in the amount of the replacement cost of the buildings or improvements on the Property, and to deliver the original of all such policies to Lender, together with receipts satisfactory to Lender evidencing payment of the premiums. All such policies shall provide that Lender shall be given thirty (30) days advance written notice of the cancellation, expiration or termination of any such policy or any material change in the coverage afforded by it. Renewal policies and any replacement policies, together with premium receipts satisfactory to Lender, shall be delivered to Lender at least thirty (30) days prior to the expiration of existing policies. Neither Trustee nor Lender shall by reason of accepting, rejecting, approving or obtaining insurance incur any liability for the existence, nonexistence, form or legal sufficiency of such insurance, or solvency of any insurer for payment of losses.

4.3  *Payment of Taxes and Utility Charges.* To pay, at least ten (10) days prior to delinquency, all taxes and assessments, both general and special, fines, penalties, levies and charges of every type or nature levied upon or assessed against any part of the Property.

4.4  *Payment and Discharge of Liens.* Borrower shall pay, when due, all claims of every kind and nature which might become a lien on the Property or any part thereof and will not at any time create or allow to exist any lien on the Property or any part thereof of any kind or nature other than this Deed of Trust; provided, however, that the following are excepted from this prohibition: (a) liens for taxes and assessments which are not delinquent although by law are given the status of a lien, and (b) such of the above claims as are, and only during the time they are, being contested by the Borrower in good faith and by appropriate legal proceedings, and (c) such deeds of trust as are approved by Lender in writing. Borrower shall post security for the payment of these contested claims as may be requested by Lender. Borrower shall not default in the payment or performance of any obligation secured by a lien, mortgage or deed of trust which is superior to this Deed of Trust.

5.  IT IS MUTUALLY AGREED THAT:

5.1  *Awards and Damages.* All judgments, awards of damages, settlements and compensation made in connection with or in lieu of (a) taking of all or any part of or any interest in the Property by or under assertion of the power of eminent domain, (b) any damage to or destruction of the Property or any part thereof by insured casualty, and (c) any other injury or damage to all or any part of the Property, are hereby assigned to and shall be paid to Lender. Lender is authorized and empowered (but not required) to collect and receive any such sums and is authorized to apply them in whole or in part upon any indebtedness or obligation secured hereby, in such order and manner as Lender shall determine at its option. Lender shall be entitled to settle and adjust all claims under insurance policies provided under this Deed of Trust and may deduct and retain from the proceeds of such insurance the amount of all expenses incurred by it in connection with any such settlement or adjustment. All or any part of the amounts so collected and recovered by Lender may be released to Borrower upon such conditions as Lender may impose for its disposition. Application of all or any part of the amounts collected and received by Lender or the release thereof shall not cure or waive any default under this Deed of Trust. If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date such notice is mailed, Lender is authorized to collect and apply the proceeds, at Lender's option, either to restoration or repair of the Property or to the sum secured by this Deed of Trust.

ZIP FHA Deed of Trust MERS
HFAG-430-5628
CAZIPFHAM.HFA  04/15/16                     Page 3 of 7                     *DocMagic eForms*
www.docmagic.com

Cazipfham.hfa.xml

5.2 *Sale or Forbearance.* No sale of the Property, forbearances on the part of Lender or extension of the time for payment of the indebtedness hereby secured shall operate to release, discharge, waive, modify, change or affect the liability of Borrower either in whole or in part.

5.3 *Lender's Rights to Release.* Without affecting the liability of any person for payment of any indebtedness hereby secured (other than any person released pursuant hereto), including without limitation any one or more endorsers or guarantors, and without affecting the lien hereof upon any of the property not released pursuant hereto, at any time and from time to time without notice: (a) Lender may, at its sole discretion, (i) release any person now or hereafter liable for payment of any or all such indebtedness, (ii) extend the time for or agree to alter the terms of payment of any or all such indebtedness, and (iii) release or accept additional security for such indebtedness, or subordinate the lien or charge hereof; and (b) Trustee, acting pursuant to the written request of Lender, may reconvey all or any part of the Property, consent to the making of any map or plat thereof, join in granting any easement thereon, or join in any such agreement of extension or subordination.

5.4 *Reconveyance.* Upon written request of Lender stating that all sums and obligations secured hereby have been discharged, or otherwise as requested in writing by Lender, and upon surrender of this Deed of Trust and the Note and any additional loan notes to Trustee for cancellation, and upon payment to Trustee of its fees and expenses, Trustee shall reconvey, without warranty, the Property or that part thereof then held hereunder. The recitals in any reconveyance shall be conclusive proof of their truthfulness and the grantee in any such reconveyance may be described "as the person or persons legally entitled thereto." When the Property has been fully reconveyed, the last such reconveyance shall operate as a reassignment of all of the rents, royalties, issues, accounts and profits of the Property to the person or persons legally entitled thereto unless such reconveyance expressly provides to the contrary.

5.5 *Payment of Principal and Interest.* Borrower shall promptly pay when due the principal of and interest (if applicable) on the indebtedness evidenced by the Note and late charges as provided by the Note.

5.6 *Application of Payments.* Unless applicable law provides otherwise, all payments received by Lender under the Note will be applied by Lender first to interest payable on the Note, and then to the outstanding principal of the Note.

5.7 *Repayment of loan.* The indebtedness secured by this deed of trust is a deferred payment obligation. The borrower shall repay to the Lender the principal, interest and any other amounts due under this Note on the earliest of the following occurrences:

    (1)   The purchase money note and deed of trust recorded concurrently herewith and which is an encumbrance on the Property in a 1st priority lien position ("First Note and First Deed of Trust") is paid in full or reaches its maturity date, whichever occurs first;

    (2)   The First Note and First Deed of Trust on the Property is refinanced; or

    (3)   The First Note and First Deed of Trust on the Property becomes due and payable for any reason.

6.   EVENTS OF DEFAULT:

6.1 *Events of Default.* Any one or more of the following events shall constitute a default under this Deed of Trust: (a) failure of Borrower to pay the indebtedness secured hereby or any installment thereof, whether principal, interest or otherwise, when and as the same become due and payable, whether at maturity or by acceleration or otherwise; or (b) failure of Borrower to observe or to perform any covenant, condition or agreement to be observed or performed by Borrower pursuant to the Note or this Deed of Trust; or (c) the occurrence of any event which, under the terms of the Note, shall entitle Lender to exercise the rights or remedies thereunder; or (d) the occurrence of any event which, under the terms of the First note or deed of trust on the Property shall entitle Lender to exercise the rights or remedies thereunder.

ZIP FHA Deed of Trust MERS
HFAG-430-5628
CAZIPFHAM.HFA 04/15/16          Page 4 of 7

*DocMagic eForms*
*www.docmagic.com*

Cazipfham.hfa.xml

EXHIBIT "B"

6.2  *Acceleration and Sale.*

(a)  Acceleration. In the event of any default Lender, without demand on Borrower, may declare all sums hereby secured immediately due and payable by notice thereof to Borrower or by executing and recording or by causing Trustee to execute and record a notice of default and election to cause the Property to be sold to satisfy the obligations secured hereby or by the commencement of an appropriate action to foreclose this Deed of Trust or by any other appropriate manner;

(b)  Sale. After delivery to Trustee of a notice of default and demand for sale and after the expiration of such time and the giving of such notice of default and sale as may then be required by law, and without demand on Borrower, Trustee shall sell the Property at the time and place of sale fixed by it in said notice of sale, at public auction to the highest bidder for cash in lawful money of the United States of America, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale and from time to time thereafter may postpone such sale by public announcement at the time and place fixed by the preceding postponement. Any person, including Borrower, Trustee or Lender, may purchase at such sale. Upon such sale by Trustee it shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty expressed or implied.

The recitals in such deed of any matters or facts shall be conclusive proof of their truthfulness. Upon sale by Trustee, and after deducting all costs, expenses and fees of Trustee and this Deed of Trust, Trustee shall apply the proceeds of sale to the payment of the principal indebtedness hereby secured, whether evidenced by the Note or otherwise, or representing advances made or costs or expenses paid or incurred by Lender under this Deed of Trust, or any other instrument evidencing or securing any indebtedness hereby secured, in such order as Lender shall direct; and then the remainder, if any, shall be paid to the person or persons legally entitled thereto.

6.3  *Attorney's Fees.* If Trustee or Lender shall be made parties to or shall intervene in any action or proceeding affecting the property or the title thereto or the interest of Trustee or Lender under this Deed of Trust, or if Lender employs an attorney to collect any or all of the indebtedness hereby secured or to foreclose this Deed of Trust, or authorizes Trustee to conduct trustee's sale proceedings hereunder, then Trustee and Lender shall be reimbursed by Borrower, immediately and without demand, for all reasonable costs, charges and attorney's fees incurred by them or either of them in any such case whether or not suit be commenced, and the same, together with interest thereon from the date of payment at the rate of ten percent (10%) per annum.

6.4  *Exercise of Remedies; Delay.* No exercise of any right or remedy by Lender or Trustee hereunder shall constitute a waiver of any other right or remedy herein contained or provided by law, and no delay by Lender or Trustee in exercising any such right or remedy hereunder shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any default hereunder.

6.5  *Trustee Substitution.* The irrevocable power to appoint a substitute trustee or trustees hereunder is hereby expressly granted to Lender, to be exercised at any time hereafter, without specifying any reason therefor by filing for record in the office where this Deed of Trust is recorded a substitution of trustee, and said power of appointment of successor trustee or trustees may be exercised as often as and whenever Lender deems advisable. The exercise of said power of appointment, no matter how often, shall not be deemed an exhaustion thereof, and upon recording of such deed or substitution of trustee or trustees so appointed shall thereupon, without further act or deed of conveyance, succeed to and become fully vested with identically the same title and estate in and to the Property hereby conveyed and with all the rights, powers, trusts and duties of the predecessor in the trust hereunder, with the like effect as if originally named as trustee or as one of the trustees.

6.6  *Remedies Cumulative.* No remedy herein contained or conferred upon Lender or Trustee is intended to be exclusive of any other remedy or remedies afforded by law or by the terms hereof to Lender or Trustee but each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity.

Caziptham.hfa.xml

## 7.  MISCELLANEOUS PROVISIONS:

7.1  *Successors, Assigns, Gender, Number.* The covenants and agreements herein contained shall bind, and the benefit and advantages shall inure to, the respective heirs, executors, administrators, successors and assigns of the parties. Wherever used, the singular number shall include the plural, and the plural the singular, and the use of any gender shall be applicable to all genders.

7.2  *Headings.* The headings are inserted only for convenience of reference and in no way define, limit, or describe the scope or intent of this Deed of Trust, or of any particular provision thereof, or the proper construction thereof.

7.3  *Actions on Behalf of Lender.* Except as otherwise specifically provided herein, whenever any approval, notice, direction, consent, request or other action by Lender is required or permitted under this Deed of Trust, such action shall be in writing.

7.4  *Terms.* The word "Lender" means the present Lender, or any future owner or holder, including pledgee, of the indebtedness secured hereby.

7.5  *Obligations of Borrower.* If more than one person has executed this Deed of Trust as "Borrower", the obligations of all such persons hereunder shall be joint and several.

7.6  *Severability.* If any provision of this Deed of Trust shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions hereof shall not in any way be affected or impaired.

7.7  *Indemnification.* Borrower shall indemnify and hold Lender, its officers and agents harmless against any and all losses, claims, demands, penalties and liabilities which Lender, its officers and agents may sustain or suffer by reason of anything done or omitted in good faith pursuant to or in connection with this Deed of Trust and not assert any claim against Lender, its officers or agents by reason of any action so taken or omitted. Borrower shall, at Borrower's expense, defend, indemnify, save and hold Lender, its officers and agents harmless from any and all claims, demands, losses, expenses, damages (general, punitive or otherwise), causes of action (whether legal or equitable in nature) asserted by any person, firm, corporation or other entity arising out of this Deed of Trust and Borrower shall pay Lender upon demand all claims, judgments, damages, losses or expenses (including reasonable legal expense) incurred by Lender as a result of any legal action arising out of this Deed of Trust.

7.8  *HUD Insurance.* Notwithstanding any provision in this Deed of Trust to the contrary, the provisions of the HUD purchase money deed of trust recorded concurrently herewith shall control to the extent that its provisions conflict with the provisions of this Deed of Trust. Moreover, any legal restrictions on conveyance of the property contained herein, or in any other loan document associated with the loan secured by this Deed of Trust, will automatically terminate if title to the property is transferred by foreclosure or deed in lieu of foreclosure or if this Deed of Trust is assigned to the Secretary of HUD.

7.9  This Deed of Trust shall be subordinate only to the First Deed of Trust recorded concurrently herewith, and other California Housing Finance Agency deeds of trust recorded concurrently herewith. Except for the aforementioned subordination, this Deed of Trust is intended to be and remain at all times prior and superior to any other deeds of trust on the Property.

7.10  *Notice.* The Borrower has requested that a copy of any notice of default and of any notice of sale hereunder be mailed to the Borrower at the address set forth above.

### REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

*Document continues on next page*

ZIP FHA Deed of Trust MERS
HFAG-430-5628
CAZIPFHAM.HFA  04/15/16                     Page 6 of 7                     DocMagic *eForms*
www.docmagic.com

Cazipfham.hfa.xml

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust on the day and year set forth above.

_____
Borrower
MAXIMO ARRIOLA

_____
Borrower
INGRID CARRILLO

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower

## ACKNOWLEDGEMENTS

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California        )
       ) ss.
County of _____RIVERSIDE_____ )

On _March 30, 2017_ before me, _Brandy Hernandez_ ,
a Notary Public, personally appeared _MAXIMO ARRIOLA AND INGRID CARRILLO_
_____ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/ their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature               (Seal)

BRANDY HERNANDEZ
Commission # 2100047
Notary Public - California
Riverside County
My Comm. Expires Feb 13, 2019

Loan Originator: KATHERINE YORK, NMLSR ID ▮
Loan Originator Organization: PROVIDENT SAVINGS BANK F.S.B., NMLSR ID ▮

ZIP FHA Deed of Trust MERS
HFAG-430-5628
CAZIPFHAM.HFA 04/15/16        Page 7 of 7        DocMagic eForms
www.docmagic.com

Cazipfham.hfa.xml

# SCHEDULE A

The land hereinafter referred to is situated in the City of Riverside, County of Riverside, State of CA, and is described as follows:

That portion of Block 8, Range 11, in the City of Riverside, County of Riverside, State of California, as shown by map on file in Book 7, Page 17 of Maps, records of San Bernardino County, California, described as follows:

Commencing at the Southwesterly corner of said Block; thence Easterly along the Northerly line of Ninth Street, 80 feet; thence at right angles Northerly and parallel with the Easterly line of Locust Street, 55 feet; thence at right angles Westerly and parallel with the Northerly line of Ninth Street, 80 feet to the Easterly line of Locust Street; thence Southerly on the Easterly line of Locust Street, 55 feet to the point of beginning.

APN: 

DOC # 2017-0131683
04/03/2017 08:00 AM Fees: $66.00
Page 1 of 18
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**Recording Requested By:**
Provident Savings Bank, F.S.B.

**\*\*This document was electronically submitted
to the County of Riverside for recording\*\***
Receipted by: MARY #420

**Return To:**

Provident Savings Bank, F.S.B.
3756 Central Avenue
Riverside, CA 92506

**Prepared By:**
Provident Savings Bank,
F.S.B.

# Deed of Trust

**Property Address:** 4199 9TH STREET, RIVERSIDE, CA
92501
**APN:** ▮▮▮▮▮▮▮▮

FHA Case No.
▮▮▮▮▮▮▮

**MIN:** ▮▮▮▮▮▮▮

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** **"Security Instrument"** means this document, which is dated March 29, 2017, together with all Riders to this document.

**(B)** **"Borrower"** is MAXIMO ARRIOLA, A SINGLE MAN; AND INGRID CARRILLO, A SINGLE WOMAN

Borrower's address is 11416 HOLMES AVENUE, Apt. 14, MIRA LOMA, CA 91752
. Borrower is the trustor under this Security Instrument.

**(C)** **"Lender"** is Provident Savings Bank, F.S.B.

Lender is a Federal Corporation

FHA Deed of Trust With MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(CA) (1606)
Page 1 of 17

organized and existing under the laws of the United States of America
Lender's address is 3756 Central Ave., Riverside, CA    92506

(D) **"Trustee"** is Provident Financial Corp., a California Corporation

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under
this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) **"Note"** means the promissory note signed by Borrower and dated March 29, 2017    . The Note
states that Borrower owes Lender three hundred thirteen thousand two hundred
twenty-two and 00/100
Dollars (U.S. $313,222.00    ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than April 1, 2047  .

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, and late charges due under the Note, and all
sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider        ☐ Planned Unit Development Rider
☐ Other
☐ Rehabilitation Loan Rider

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to
debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated
teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)

FHA Deed of Trust With MERS-CA                                                    9/30/2014
Bankers Systems™ VMP ®                                                      VMP4N(CA) (1605)
Wolters Kluwer Financial Services                                                Page 2 of 17

EXHIBIT "C"

Case 6:23-bk-11403-SY  Claim 5-1  Filed 04/22/23  Desc Main Document  Page 49 of 73
Case 6:23-bk-11403-SY  Doc 54-1  Filed 04/22/23  Entered 04/22/24 16:19:29  Page 46
Main Document of 63 Page 49 of 73

damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(S)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| County | of | Riverside | : |

*(Type of Recording Jurisdiction)*        *(Name of Recording Jurisdiction)*

See Attached: See Legal Description attached hereto and made a part hereof.

**Parcel ID Number:** ▮▮▮▮▮▮▮      which currently has the address of
4199 9TH STREET                                *(Street)*
RIVERSIDE          *(City)*, California 92501     *(Zip Code)*
("Property Address"):

FHA Deed of Trust With MERS-CA                                  9/30/2014
Bankers Systems™ VMP ®                            VMP4N(CA) (1605)
Wolters Kluwer Financial Services                              Page 3 of 17

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as expressly stated otherwise in this Security Instrument or the Note, all payments accepted and applied by Lender shall be applied in the following order of priority:

FHA Deed of Trust With MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

8/30/2014
VMP4N(CA) (1605)
Page 4 of 17

**EXHIBIT "C"**

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified

FHA Deed of Trust With MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

8/30/2014
VMP4N(CA) (1605)
Page 5 of 17

EXHIBIT "C"

under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

FHA Deed of Trust With MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(CA) (1605)
Page 6 of 17

Case 6:23-bk-14028-SY    Claim 54-1    Filed 04/22/23    Desc Main Document    Page 53 of 73
Case 6:23-bk-14028-SY    Doc 54-1    Filed 04/22/24    Entered 04/22/24 16:19:29    Page 50
Main Document    of 63    Page 53 of 73

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by

FHA Deed of Trust With MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(CA) (1605)
Page 7 of 17

Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or

FHA Deed of Trust With MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(CA) (1505)
Page 8 of 17

EXHIBIT "C"

repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

FHA Deed of Trust With MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(CA) (1605)
Page 8 of 17

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

FHA Deed of Trust With MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(CA) (1605)
Page 10 of 17

EXHIBIT "C"

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Lender agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such

FHA Deed of Trust With MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(CA) (1605)
Page 11 of 17

EXHIBIT "C"

conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16.  Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17.  Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18.  Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding; (ii) reinstatement will preclude foreclosure on different grounds in the future; or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

FHA Deed of Trust With MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(CA) (1605)
Page 12 of 17

EXHIBIT "C"

19. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

20. **Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the

FHA Deed of Trust With MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(CA) (1605)
Page 13 of 17

Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

   **If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

FHA Deed of Trust With MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(CA) (1605)
Page 14 of 17

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

26. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

27. **Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

FHA Deed of Trust With MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(CA) (1605)
Page 15 of 17

EXHIBIT "C"

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____     _____ (Seal)
MAXIMO ARRIOLA                                -Borrower


_____     _____ (Seal)
INGRID CARRILLO                               -Borrower


_____     _____ (Seal)
                                              -Borrower


_____     _____ (Seal)
                                              -Borrower


☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

FHA Deed of Trust With MERS-CA
Bankers Systems™ VMP ®                                9/30/2014
Wolters Kluwer Financial Services                     VMP4N(CA) (1605)
                                                      Page 16 of 17

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of** CALIFORNIA
**County of** Riverside
On March 30th 2017 , before me Brandy Hernandez
Notary Public, personally appeared

Maximo Arriola and Ingrid Carrillo

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**BRANDY HERNANDEZ**
**Commission # 2100047**
**Notary Public - California**
**Riverside County**
**My Comm. Expires Feb 13, 2019**

_Notary Public_

_My commission expires:_ 2|13|19

**Loan Origination Organization:** Provident Savings Bank, F.S.B.
**NMLS ID:** ███████
**Loan Originator:** KATHERINE YORK
**NMLS ID:** ███████

FHA Deed of Trust With MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(CA) (1605)
Page 17 of 17

# SCHEDULE A

The land hereinafter referred to is situated in the City of Riverside, County of Riverside, State of CA, and is described as follows:

That portion of Block 8, Range 11, in the City of Riverside, County of Riverside, State of California, as shown by map on file in Book 7, Page 17 of Maps, records of San Bernardino County, California, described as follows:

Commencing at the Southwesterly corner of said Block; thence Easterly along the Northerly line of Ninth Street, 80 feet; thence at right angles Northerly and parallel with the Easterly line of Locust Street, 55 feet; thence at right angles Westerly and parallel with the Northerly line of Ninth Street, 80 feet to the Easterly line of Locust Street; thence Southerly on the Easterly line of Locust Street, 55 feet to the point of beginning.

APN: ██████████

3/05/2018 04:01 PM Fees: $99.00
Page 1 of 1
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

Requested and Prepared by:
Zieve, Brodnax & Steele, LLP

When Recorded Mail To:
LoanCare, LLC
3637 Sentara Way
Virginia Beach, VA 23452

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: ALYCIA #778

| TS No [redacted] | MERS MIN: [redacted] |
| | MERS PH: 1-888-679-6377 |

# ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:
**Lakeview Loan Servicing, LLC** All beneficial interest under that certain Deed of Trust dated: 3/29/2017 executed
by MAXIMO ARRIOLA A SINGLE MAN; AND INGRID CARRILLO, A SINGLE WOMAN, as Trustor(s), and
Mortgage Electronic Registration Systems, Inc., as nominee for PROVIDENT SAVINGS BANK, F.S.B., its
successors and assigns, as Beneficiary, to PROVIDENT FINANCIAL CORP., as Trustee, and recorded on 4/3/2017
as Instrument Number 2017-0131683     of Official Records, in the office of the County Recorder of Riverside
County, California and also all rights accrued or to accrue under said Deed of Trust.
**MERS Address: P.O. Box 2026 Flint, MI 48501-2026**

Dated: October 30, 2018

By:    **Mortgage Electronic Registration Systems, Inc.,
as nominee for PROVIDENT SAVINGS BANK,
F.S.B., its successors and assigns**

_Keith T Woodhouse_
KEITH T. WOODHOUSE
**Assistant Secretary**

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document.

State of     **VIRGINIA**
City of      **VIRGINIA BEACH**

On 10/30/18  before me,    ASHLEY N. ROUSE                    Notary Public, personally
appeared      KEITH T. WOODHOUSE                who proved to me on the basis of satisfactory
evidence  to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of      **VIRGINIA**   that the foregoing
paragraph is true and correct.
WITNESS my hand and official seal.

Signature _Ashley N. Rouse_ (Seal)

ASHLEY N. ROUSE

ASHLEY N. ROUSE
Notary Public
Commonwealth of Virginia
Registration No. 7758175
My Commission Expires 1-31-21

**EXHIBIT "D"**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
30 Corporate Park, Suite 450
Irvine, CA 92606

A true and correct copy of the foregoing document entitled (*specify*): **PROOF OF CLAIM will** be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 14, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| Benjamin Heston, Attorney | bhestonecf@gmail.com |
| Rod Danielson (TR), Trustee | notice-efile@rodan13.com |
| United States Trustee (RS) | ustpregion16.rs.ecf@usdoj.gov |

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **November 14, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

<u>DEBTOR</u>
Maximo Arturo Arriola
4199 9th Street
Riverside, CA 92501

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 14, 2023 | Katherine Kellams | /s/ Katherine Kellams |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

EXHIBIT 1                    **F 9013-3.1.PROOF.SERVICE**

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Nichole L. Glowin, Esq. #262932<br>ZBS Law, LLP<br>30 Corporate Park, Suite 450<br>Irvine, CA 92606<br>Phone: (714) 848-7920<br>Facsimile: (714) 908-7807<br>Email: bankruptcy@zbslaw.com<br><br>☒ *Attorney for Movant*<br>☐ *Movant appearing without an attorney* | **FILED & ENTERED**<br><br>**APR 15 2024**<br><br>**CLERK U.S. BANKRUPTCY COURT**<br>**Central District of California**<br>**BY Mason    DEPUTY CLERK**<br><br>**CHANGES MADE BY COURT** |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION**

| In re:<br><br>MAXIMO ARTURO ARRIOLA,<br><br><br><br><br><br>Debtor(s). | CASE NO.: 6:23-bk-14028-SY<br>CHAPTER: 13 |
|---|---|
| | **ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(REAL PROPERTY)** |
| | DATE: April 10, 2024<br>TIME: 9:30 a.m.<br>COURTROOM: 302<br>PLACE: U.S. Bankruptcy Court<br>　　　3420 Twelfth Street<br>　　　Riverside, CA 92501 |

**Movant:** Lakeview Loan Servicing, LLC

1. The Motion was:　☐ Opposed　☐ Unopposed　☒ Settled by stipulation [docket no. 45]

2. The Motion affects the following real property (Property):

   *Street address*:　　　4199 9th Street
   *Unit/suite number*:
   *City, state, zip code*:　Riverside, CA 92501

   Legal description or document recording number (including county of recording): Document No. 2017-0131683 – Recorded on April 3, 2017 / County of Riverside, California.

   ☐ See attached page.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

3. The Motion is granted under:

   a. ☐ 11 U.S.C. § 362(d)(1)

   b. ☐ 11 U.S.C. § 362(d)(2)

   c. ☐ 11 U.S.C. § 362(d)(3)

   d. ☐ 11 U.S.C. § 362(d)(4).  The filing of the bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors that involved:

      (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval; and/or

      (2) ☐ Multiple bankruptcy cases affecting the Property.

      (3) ☐ The court  ☐ makes  ☐ does not make  ☐ cannot make
          a finding that the Debtor was involved in this scheme.

      (4) If recorded in compliance with applicable state laws governing notices of interests or liens in real property, this order shall be binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of this order by the court, except that a debtor in a subsequent case under this title may move for relief from this order based upon changed circumstances or for good cause shown, after notice and a hearing.  Any federal, state or local government unit that accepts notices of interests or liens in real property shall accept any certified copy of this order for indexing and recording.

4. ☐ As to Movant, its successors, transferees and assigns, the stay of 11 U.S.C. § 362(a) is:

   a. ☐ Terminated as to the Debtor and the Debtor's bankruptcy estate.

   b. ☐ Modified or conditioned as set forth in Exhibit _____ to this order.

   c. ☐ Annulled retroactively to the bankruptcy petition date.  Any postpetition acts taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5. ☐ Movant may enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable nonbankruptcy law, but may not pursue any deficiency claim against the Debtor or property of the estate except by filing a proof of claim pursuant to 11 U.S.C. § 501.

6. ☐ Movant must not conduct a foreclosure sale of the Property before (*date*) _____.

7. ☒ The stay shall remain in effect subject to the terms and conditions set forth in the Adequate Protection Agreement contained within this order.

8. ☐ In chapter 13 cases, the trustee must not make any further payments on account of Movant's secured claim after entry of this order.  The secured portion of Movant's claim is deemed withdrawn upon entry of this order without prejudice to Movant's right to file an amended unsecured claim for any deficiency.  Absent a stipulation or order to the contrary, Movant must return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this order.

9. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, as to the same terms and conditions as to the Debtor.

10. ☐ The 14-day stay as provided in FRBP 4001(a)(3) is waived.

11. This order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code.

12. Movant, or its agents, may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    EXHIBIT 2                          F 4001-1.RFS.RP.ORDER

13.   ~~Upon entry of this order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ.~~
~~Code § 2920.5(c)(2)(C).~~

14.  ☐  A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless
of any future bankruptcy case concerning the Property for a period of 180 days from the hearing of this Motion

(a)  ☐  without further notice.

(b)  ☐  upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable
nonbankruptcy law.

15.  ☐  This order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of
180 days, so that no further automatic stay shall arise in that case as to the Property.

16.  ☐  This order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any
interest in the Property for a period of 180 days from the hearing of this Motion:

(a)  ☐  without further notice.

(b)  ☐  upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable
nonbankruptcy law.

17.  ☐  This order is binding and effective in any future bankruptcy case, no matter who the debtor may be

(a)  ☐  without further notice.

(b)  ☐  upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable
nonbankruptcy law.

18.  ☐  Other (*specify*):

###

Date: April 15, 2024

_Scott Yun_

Scott H. Yun
United States Bankruptcy Judge

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    EXHIBIT 2                                    **F 4001-1.RFS.RP.ORDER**

# ADEQUATE PROTECTION AGREEMENT

*(This attachment is the continuation page for paragraph 7 of this order.)*

The stay remains in effect subject to the following terms and conditions:

1. ☐ The Debtor tendered payments at the hearing in the amount of $_____

2. ☒ The Debtor must make regular monthly payments in the amount of $2,206.98 commencing (*date*) March 1, 2024.
   The amount of these payments may be subject to change under the terms of the parties' original agreements.  All
   payments due Movant under this Adequate Protection Agreement must be paid to Movant at the following
   address:

   LoanCare, LLC
   PO BOX 8068
   Virginia Beach, VA 23450

3. ☒ The Debtor must cure the postpetition default computed through February 1, 2024 in the sum of $12,733.80
   (including 10/01/2023 - 12/01/2023 @ $2,190.28 per month; 01/01/2024 - 02/01/2024 @ $2,206.98 per month;
   Suspense Balance $[0.00]; Attorney Fees and Costs $1,749.00) as follows:

   a. ☐ In equal monthly installments of $ _____ each commencing (*date*)_____ and
      continuing thereafter through and including (*date*)_____.

   b. ☐ By paying the sum of $ _____ on or before (*date*)_____,

   c. ☐ By paying the sum of $ _____ on or before (*date*)_____,

   d. ☐ By paying the sum of $ _____ on or before (*date*)_____,

   e. ☒ Other (*specify*): Debtor shall cure the post-petition arrears of $12,733.80, together with any pre-petition
      amounts due and owing under the subject loan, by completing a refinance transaction to pay
      off Movant's loan in full pursuant to Movant's payoff demand submitted into escrow, on or
      before June 30, 2024.

4. ☒ The Debtor must maintain insurance coverage on the Property and must remain current on all taxes that fall due
   postpetition with regard to the Property.

5. ☐ The Debtor must file a disclosure statement and plan on or before (*date*) _____
   The disclosure statement must be approved on or before (*date*) _____
   The plan must be confirmed on or before (*date*) _____

6. ☒ Upon any default in the terms and conditions set forth in paragraphs 1 through 5 of this Adequate Protection
   Agreement, Movant must serve written notice of default to the Debtor and the Debtor's attorney, if any.  If the
   Debtor fails to cure the default within 14 days after service of such written notice:

   a. ☐ The stay automatically terminates without further notice, hearing or order.

   b. ☒ Movant may file and serve a declaration under penalty of perjury specifying the default, together with a
      proposed order terminating the stay, which the court may grant without further notice or hearing.

   c. ☐ The Movant may move for relief from the stay upon shortened notice in accordance with LBRs.

   d. ☐ The Movant may move for relief from the stay on regular notice.

7. ☒ Notwithstanding anything contained in this Adequate Protection Agreement to the contrary, the Debtor shall be
   entitled to a maximum of (*number*) three (3) notices of default and opportunities to cure pursuant to the preceding
   paragraph.  Once the Debtor has defaulted this number of times on the obligations imposed by this order and has
   been served with this number of notices of default, Movant is relieved of any obligation to serve additional notices
   of default or to provide additional opportunities to cure.  If an event of default occurs thereafter, Movant will be

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    EXHIBIT 2                        F 4001-1.RFS.RP.ORDER

entitled, without first serving a notice of default or providing the Debtor with an opportunity to cure, to file and serve a declaration under penalty of perjury setting forth in detail the Debtor's failures to perform under this Adequate Protection Agreement, together with a proposed order terminating the stay, which the court may enter without further notice or hearing.

8. ☒ This Adequate Protection Agreement is binding only during the pendency of this bankruptcy case.  If, at any time, the stay is terminated with respect to the Property by court order or by operation of law, this Adequate Protection Agreement ceases to be binding and Movant may proceed to enforce its remedies under applicable nonbankruptcy law against the Property and/or against the Debtor.

9. ☒ If Movant obtains relief from stay based on the Debtor's defaults under this Adequate Protection Agreement, the order granting such relief will contain a waiver of the 14-day stay as provided in FRBP 4001(a)(3).

10. ☒ Movant may accept any and all payments made pursuant to this order without prejudice to or waiver of any rights or remedies to which Movant would otherwise have been entitled under applicable nonbankruptcy law.

11. ☒ Other (*specify*): If Movant obtains relief from stay based on Debtor's defaults under any of the terms of this Adequate Protection Agreement set forth in Paragraphs 1 to 5 above, the order granting relief from stay shall include in rem relief under 11 U.S.C. § 362(d)(4) and the order granting said relief, if recorded in compliance with applicable State laws governing notices of interest or liens in real property, shall be binding in any other case under this title purporting to affect the Property filed not later than two (2) years after the date of entry of such order by the Court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and hearing pursuant to 11 U.S.C. § 362(d)(4)(B).

IT IS SO STIPULATED:

Dated: 04/05/2024          ZBS Law, LLP

         /s/ Nichole L. Glowin
         Nichole L. Glowin, Esq.
         Counsel for Movant,
         Lakeview Loan Servicing, LLC

Dated: 04/05/2024

         see docket entry no. 45
         Benjamin Heston, Esq.
         Counsel for Debtor,
         Maximo Arturo Arriola

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014      EXHIBIT 2      F 4001-1.RFS.RP.ORDER

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

30 Corporate Park, Suite 450, Irvine, CA 92606

A true and correct copy of the foregoing document entitled (*specify*): **OBJECTION TO CONFIRMATION OF DEBTORS' AMENDED CHAPTER 13 PLAN**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____**4/22/2024**_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Benjamin Heston, Counsel for Debtor                bhestonecf@gmail.com
Rod Danielson, Chapter 13 Trustee                   notice-efile@rodan13.com
United States Trustee (RS)                                ustpregion16.rs.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____**4/22/2024**_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Maximo Arturo Arriola
4199 9th Street
Riverside, CA 92501
*DEBTOR*

United States Bankruptcy Court
Central District of California
The Honorable Scott H. Yun
3420 Twelfth Street, Suite 345
Riverside, CA 92501-3819
*COURT*
*Tracking # 9589 0710 5270 0409 6557 85*

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/22/2024 | Katherine Kellams | /s/ Katherine Kellams |
|-----------|-------------------|----------------------|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE